SECOND DIVISION

September 4, 2001

No. 1-97-4622

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

WILLIE C. PUGH, JR.,

Defendant-Appellant.

))))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Edwin A. Gausselin,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

Defendant, Willie C. Pugh, Jr., pled guilty to murder, armed robbery, forcible detention and unlawful use of a weapon on January 11, 1988.  He was thereafter sentenced to death on the murder conviction, and concurrent sentences of 30 years for armed robbery and 7 years for forcible detention.  On appeal, defendant's convictions were affirmed, but his death sentence was vacated and the matter was remanded with directions to conduct a new death-penalty-eligibility hearing and a new sentencing hearing because defendant's trial counsel misunderstood the law with respect to the first phase of the death penalty hearing.  
People v. Pugh
, 157 Ill. 2d 1, 26, 623 N.E.2d 255 (1993).

On remand, the trial court again found defendant death eligible but sentenced him to an extended term of 70 years on the murder conviction to be served consecutively with his previously 

imposed concurrent sentences of 30 and 7 years for armed robbery and forcible detention, respectively.  He appeals, contending (1) the trial court on remand did not follow the mandate of the supreme court where it did not resentence him on the armed robbery and forcible detention convictions; (2) the trial court erred in finding him death eligible; (3) the 100-year aggregate total of the sentences was an abuse of discretion; (4) the trial court improperly imposed extended-term and consecutive sentences on the murder conviction; and (5) he was entitled to good-time credit against each sentence imposed.  Defendant has also filed a petition for rehearing raising various issues and subsequent motions to file supplemental authority in which he questions the constitutionality of his sentence under the United States Supreme Court's recent opinion in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

The facts at the death-eligibility hearing on remand showed that on December 16, 1986, South Chicago Heights police officer Michael Haskins received a call at 9:30 p.m. reporting that an alarm had been activated at the Clark gas station located at 26th Street and Chicago Road in South Chicago Heights.  When Haskins arrived there, he saw Officer Wolfe standing at the end of the counter inside the station.  When Wolfe arrived earlier, he had opened the door to the gas station and asked if everything was all right.  The victim, who was a teenage gas station attendant named Bryan Douglas, stated, "No, I'm being robbed."  Defendant then pointed a gun at Wolfe and said "Don't push me.  I want out of here."  As Haskins approached the door, three persons ran out of the gas station, one of whom was later identified as a codefendant.  Defendant held a shotgun to the victim's head as Haskins told defendant to let the victim go.  Officer Haskins continued to talk to defendant in an attempt to calm him and convince him to release the victim.  The officer told defendant, "You don't need this.  You are making it worse."  Defendant told Haskins to move away from the door and then lowered the shotgun to Haskins' stomach.  Haskins moved from the door, and defendant, with the victim still on his left side, backed out of the gas station door.

Defendant then backed away with the victim while Officers Wolfe and Haskins remained inside the station.  After Haskins radioed for help, Haskins left the station and took several steps toward defendant and the victim.  Haskins had his gun in his holster when he asked defendant to release the victim.  Defendant again pointed the shotgun at Haskins and ordered him to go back into the station.  There, Haskins spoke to Wolfe, drew his gun, kept it at his side, and walked back outside.  Defendant and the victim were still walking backwards and were about 50 feet away and in the well-lighted gas station lot.  Defendant still had the gun to the victim's head.  Haskins walked slowly toward defendant and the victim, trying to convince defendant to release the victim and telling defendant he would not chase defendant if he did.  

Defendant and the victim continued to back away with defendant holding the shotgun to the victim's head.  They walked off the station lot and onto the sidewalk that paralleled 26th Street.  As they walked, a parked car partially obstructed Haskins' view of the two.  However, he could see the men from the chest up and saw that defendant was still holding the gun to the victim's head.  Haskins continued to ask defendant to release the victim.  Neither defendant nor the victim spoke as defendant stepped away and lowered the shotgun to the victim's side with his right hand by the trigger and his left hand underneath the stock of the gun.  At this time the victim had his hands raised.  Haskins then heard a shot, saw the victim fall and defendant turn and run away.  Officer Wolfe stated that by this time he joined Officer Haskins and found the victim's body.  Defendant was apprehended by other officers and directed police to a yard where a shotgun was recovered.

It was stipulated that firearms examiner Karen Vanderwerff would testify that the murder weapon was a 12-gauge sawed-off shotgun, which could only be fired in a single-action mode, meaning that the hammer must be cocked before the trigger can be pulled to fire the gun.  She performed a trigger-pull test which showed that 8 to 8 ½ pounds of force were needed to fire the weapon.  In her opinion this force was a medium to heavy amount. 

It was further stipulated that a pathologist would testify that the victim died from a gunshot to the chest, fired from a distance of three to six feet.

The parties also stipulated to the testimony of Assistant State's Attorney John Murphy, who took a written and signed statement from defendant.  Defendant told Murphy that he went to the gas station with Ingram Rush.  Rush entered first and defendant followed.  It was Rush's job to distract the clerk.  Defendant went through the store, picked up soda and snacks, went to the cash register, pulled a gun and told the attendant to give him the money.  The attendant, however, pushed the alarm button.  When the police arrived, defendant told them to stay right there.  After defendant left the store with the attendant, defendant told the police to get back inside the station.  As he walked with the attendant, defendant had his gun pointed toward the store.  There were two other men with Rush; one was Arnold Lewis.  Defendant said that Arnold was the person who shot the victim and that, between the four of them, they were armed with two double-barrel and two single-barrel shotguns.

Defendant then told Murphy that he wanted to change his statement.  Defendant said that he was lying when he said that there were two other men with Rush and him when they robbed the gas station.  Defendant said that only he and Rush were involved and it was he who shot the victim.  He claimed that the gun "went off" while it was in his hand.

For the defense, former Cook County sheriff's police officer Larson testified that he went to the gas station after the shooting and spoke to Sergeant Wolfe.  Wolfe was upset and told Larson that the gas station had been robbed and that he and another officer had been held at gunpoint by the suspect.  Wolfe also told him that the suspect took the attendant out of the gas station and went 
north toward 26th Street.  Wolfe then heard a shot, but the suspect and the victim were out of his view.

South Chicago Heights police officer Lawrence Dujsik spoke with defendant before defendant gave his written statement.  Defendant told Dujsik that while Ingram Rush spoke with the attendant in the gas station, defendant pulled out a gun and told the attendant to trust him and he would not get hurt.  Defendant then saw the attendant push the alarm button.  After the officers arrived, defendant took the attendant and walked to the end of the building.  Defendant heard sirens, and when he and the attendant got around the corner, he let the attendant go and told him to leave.  Then a shot was fired, and defendant ran.

Finally, the defense made an offer of proof at the hearing that Officer Larson would testify that when he arrived at the scene, he spoke with Officer Wolfe, who told him that defendant used the victim as a shield, they left the view of the two police officers and Wolfe and Haskins then heard a loud noise.

Following closing arguments, the trial court found that while it had reasonable doubt regarding defendant's intent to kill due to inconsistencies in the testimony of Officers Haskins and Wolfe and their reports, it found defendant had knowledge that his acts created a strong probability of death or great bodily harm to the victim.  The court therefore found defendant eligible for the death penalty.

Following evidence in aggravation and mitigation, the court found that there were circumstances sufficient to preclude a death sentence, but held that the offenses were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty.  It sentenced defendant to an extended term of 70 years for the murder, directing that the sentence be served consecutively to the previous concurrent sentences of 30 years for armed robbery and 7 years for forcible detention. 

Defendant's first argument on appeal is that this court must remand for resentencing because the trial court failed to follow the mandate of the supreme court when it only resentenced him on the murder conviction, and not on the armed robbery and forcible detention convictions.  Defendant cites three reasons for finding that the Illinois Supreme Court in 
People v. Pugh
, 157 Ill. 2d 1, 623 N.E.2d 255 (1993), ordered a new sentencing hearing on all charges.  Defendant claims (1) the language of the opinion and the mandate when read consistently require a new sentencing hearing on all charges; (2) because the original trial error occurred at the death-eligibility stage and tainted everything that followed, the proceedings must start with a new death-eligibility hearing; and (3) the supreme court found it unnecessary to consider other issues of sentencing error raised, which showed its intent that a new sentencing hearing on all of the charges be held.

In 
Pugh
, the Illinois Supreme Court found defendant's counsel ineffective at the first phase of the death penalty sentencing hearing when counsel stipulated to intent and therefore to eligibility for the death penalty.  The court stated, "[t]he ineffectiveness of defense counsel requires that defendant's death sentence be vacated and the cause remanded for a new death qualifying and sentencing hearing."  
Pugh
, 157 Ill. 2d at 23.  The 
Pugh
 court remanded this matter to the trial court with the following directions:

"For the reasons stated, defendant's convictions are affirmed, but his sentence of death is vacated.  The cause is remanded to the circuit court of Cook County for a new hearing to determine defendant's eligibility for the death penalty, as well as a new sentencing hearing.  We direct that the hearings be held before a different trial judge."  Pugh, 157 Ill. 2d at 26.

It is well settled that where the directions of a reviewing court are specific, a positive duty devolves upon the court to which the cause is remanded to enter an order in accordance with the directions contained in the mandate.  Precise and unambiguous directions in a mandate must be obeyed.  
People ex rel. Daley v. Schreier
, 92 Ill. 2d 271, 276, 442 N.E.2d 185 (1982).  The correctness of the trial court's action is to be determined from the appellate court's mandate, rather than the opinion.  However, if the direction is to proceed in conformity with the opinion, the content of the opinion is significant.  
PSL Realty Co. v. Granite Investment Co.
, 86 Ill. 2d 291, 308, 427 N.E.2d 563 (1981).

The mandate in this case affirms defendant's convictions and unambiguously states that defendant's murder sentence is vacated; it does not vacate the other sentences.  Therefore, the trial court was without authority to hold a sentencing hearing on those sentences that had been upheld by the supreme court.  

Defendant contends that the fact the supreme court did not address his general sentencing issues means that it implicitly indicated he was to receive a new sentencing hearing on all convictions.  However, the mandate is clear in this case.  There was no direction to proceed "in conformity with the opinion."  Therefore, we should not look to the opinion for guidance.  See 
People v. Palmer
, 148 Ill. 2d 70, 81, 592 N.E.2d 940 (1992).  Because the only sentence vacated in this case was for murder, the trial court acted correctly in only holding a sentencing hearing on that conviction.

Defendant next argues that the trial court erred in finding that he was eligible for the death penalty under section 9-1(b)(6) of the Criminal Code of 1961.  720 ILCS 5/9-1(b)(6) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 9-1(b)(6)).  In ruling on defendant's eligibility for the death penalty upon remand, the trial court held:

"In order for *** the defendant to be eligible, the State must prove beyond a reasonable doubt that the defendant is more than 18 years of age; and, in fact, he was 21 at the time of the commission of this crime.

That the defendant killed the victim; and, in fact, that is not in dispute.  That the victim was killed during the course of another felony while, in fact, Bryan Douglas was killed during the commission of two enumerated felonies, that being armed robbery and forcible detention.

And finally that the defendant intended to kill the murdered individual or with the knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual or another.  It's the last premise that I have to decide.

As I previously stated, it's the burden of the State to prove each of the four elements beyond a reasonable doubt.  There is no doubt with respect to the first three, and I find that because of the inconsistencies in the testimony of Haskins and Wolfe and their reports that I do have a reasonable doubt with respect to the defendant's intent to kill Bryan Douglas.

However, I make the following findings with respect to the defendant's knowledge that his acts created a strong probability of death or great bodily harm to the murdered individual and these are:

Number 1, that he intended to commit an armed robbery.  Number 2, that his weapon of choice was a sawed off 12 gauge shotgun.  Three, that the weapon was loaded.  Four, that the shotgun was a single action weapon that had to be cocked before the trigger engaged.

Five, that the weapon was cocked and the trigger had a normal to medium heavy pull.  Six, that the defendant knew an alarm had been pushed and chose to complete the armed robbery.  Seven, that he chose to take the victim with him when he left the scene despite the police telling him that he was just making things worse.  And finally that he continued to hold Bryan Douglas when he was arguably able to escape the police.

It is because of these facts that I, therefore, find that the defendant had that requisite knowledge, and I find that he is eligible for the death penalty."

Defendant contends that the trial court erred by improperly basing its findings on defendant's actions prior to the acts which caused the victim's death, and by failing to consider that its finding regarding the inconsistencies in the testimony of Officers Haskins and Wolfe and their respective reports created reasonable doubt about the requisite mental state of knowledge as well as intent to kill.

We are unpersuaded by defendant's argument that the court, in making a determination of whether defendant had knowledge that his acts created a strong probability of death or great bodily harm, was limited to examining defendant's intent at the time he fired the gun and the direction of the barrel when the gun discharged.  Those considerations, while obviously relevant, are more important to a determination of whether defendant intended to kill the victim.  Moreover, contrary to defendant's argument, the evidence relied upon by the trial court in finding defendant had sufficient knowledge included evidence of acts that caused the victim's death.  The choice to use a loaded and dangerous weapon to commit armed robbery, the decision to cock that weapon, the fact that the trigger had a "normal to medium heavy pull," and the facts surrounding defendant's exacerbation of the situation in taking a hostage from the scene and continuing to hold that hostage beyond the time he was arguably able to flee the scene were all appropriate considerations for the trial court in making a knowledge determination and created an inference that defendant had knowledge that his acts created a strong probability of death or great bodily harm.  We specifically note that the fact the weapon needed to be cocked to fire and the evidence regarding the force necessary to fire the weapon go directly to the acts that caused the death of the victim.  Moreover, the trial court's determination that unspecified inconsistencies in the testimony and reports of the officers on the scene prevented a finding of intentional murder did not prevent the trial court from finding credible and relying on Officer Haskins' specific testimony regarding his observation of defendant as he fired the shot that killed the victim.  The trial court could find that the evidence, including the testimony of the officers, created an inference that defendant knew his acts created a strong probability of death or great bodily harm and find that the State had met its burden by proving such knowledge beyond a reasonable doubt.

In his third contention defendant argues that the court erred in sentencing him to 100 years' total imprisonment.  He contends that the court failed to give adequate consideration to mitigation, that the extended-term sentence of 70 years for first degree murder was improper and that the court erred in imposing consecutive sentences.  

Defendant first contends that the evidence did not support a finding of brutal and heinous behavior, and the court improperly considered that the murder was committed in the course of an armed robbery to support the extended-term sentence.
(footnote: 1)  It is the most serious offense for which a defendant was convicted that a court must find was accompanied by brutal or heinous behavior and it is wrong for a court to rely in great part for such a finding on facts establishing a lesser offense that preceded the most serious offense.  
People v. Fieberg
, 108 Ill. App. 3d 665, 669-70, 439 N.E.2d 543 (1982).  At the sentencing hearing, the court stated:

"With regard to aggravation I find that the defendant, Willie Pugh, caused the death of the victim, Bryan Douglas, and it was caused during the commission of an armed robbery and forcible felony."

Then, the court stated:

"In mitigation, I find that the defendant's lack of prior criminal history, coupled with his admissions of guilt and proximate remorse to be sufficient to preclude the imposition of the death sentence."

The above reference to the armed robbery and forcible felony was made in finding defendant eligible for the death penalty and was not made in considering whether to impose an extended-term sentence.  After declining to impose the death penalty, the court then stated:

"I further find that while I have made a finding that the State has not proved the intentional killing of the victim beyond a reasonable doubt, it has proved the requisite knowledge for felony murder beyond a reasonable doubt, and based on that I find that these offenses were accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty."

It is within the trial court's discretion to determine what constitutes exceptionally brutal and heinous behavior indicative of wanton cruelty for the purpose of imposing an extended-term sentence, and absent an abuse of that discretion the sentence of the trial court may not be altered on review.  
People v. Edens
, 174 Ill. App. 3d 1033, 1045, 529 N.E.2d 617 (1988).
(footnote: 2)  "Brutal" includes conduct that is grossly ruthless, devoid of mercy or compassion, or cruel and cold-blooded, while "heinous" conduct is conduct that is hatefully or shockingly evil, grossly bad, or enormously and flagrantly criminal.  
People v. Abernathy
, 189 Ill. App. 3d 292, 316, 545 N.E.2d 201 (1989).   A single act that causes death or injury may be sufficient to demonstrate the existence of wanton cruelty (
People v. Deaton
, 236 Ill. App. 3d 530, 547, 603 N.E.2d 803 (1992)); however the extended-term provision was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence (
People v. Evans
,  87 Ill. 2d 77, 88-89, 429 N.E.2d 520 (1981)).  A sentencing court must look to all of the factors surrounding the incident in question (
People v. Hickman
, 143 Ill. App. 3d 195, 205-06, 492 N.E.2d 1091 (1986)), and each case must be decided on its own facts (
People v. Beamon
, 213 Ill. App. 3d 410, 418, 572 N.E.2d 1011 (1991)).

Factors to be considered in determining whether an extended term is appropriate include whether the defendant exhibits remorse, whether the defendant inflicted prolonged pain or torture, whether the offense was premeditated, whether there was a lack of immediate provocation, whether the victim was shot at close range, and the danger created by defendant's actions.  See 
People v. Andrews
, 132 Ill. 2d 451, 466, 548 N.E.2d 1025 (1989).  Mental suffering is a proper consideration in deciding whether to impose an extended-term sentence, and it has been recognized that mental suffering often exceeds that of physical injury.  
People v. Jones
, 161 Ill. App. 3d 688, 703-04, 515 N.E.2d 166 (1987).  A possibility of injury to others and mental suffering by the victim have been enough to justify the imposition of an extended-term sentence.  See 
People v. Jones
, 73 Ill. App. 3d 99, 391 N.E.2d 767 (1979).  Furthermore, an extended-term sentence can be appropriate even where defendant has no prior record and presents evidence of his good character, since the most important factor to be considered in imposing sentence is the seriousness of the crime.  
People v. Johnson
, 159 Ill. App. 3d 991, 1001, 513 N.E.2d 852 (1987).

Here, defendant walked into a public place brandishing a sawed-off shotgun.  Defendant remained at the scene even though he knew the police had been summoned and the situation had the potential for an armed confrontation.  Defendant then made the victim his hostage and took him out of the gas station, holding a sawed-off shotgun to his head, where he held it for five minutes before the victim was killed.  The trial court could reasonably find that the victim experienced severe mental suffering during the five-minute ordeal, and the danger to the public and the police was obvious.  Moreover, the record does not indicate that defendant was provoked in any manner prior to shooting the victim at close range.  While defendant expressed his remorse, the seriousness of the offense justified an extended-term sentence.

Additionally, the trial court was not obliged to recite or assign a value to each fact upon which it relied in determining a sentence.  
People v. Lucien
, 109 Ill. App. 3d 412, 420, 440 N.E.2d 899 (1982).  Therefore, if the sentence is justified by the record, the absence of specific findings is not fatal.  Lastly, while the court made reference to the fact that this murder was committed in the course of an armed robbery, in many cases, the exceptionally brutal or heinous behavior necessary to authorize the imposition of an extended-term sentence will itself constitute another separate offense.  
People v. Smallwood
, 102 Ill. 2d 190, 195, 464 N.E.2d 1049 (1984) (affirming an extended-term sentence where the brutal and heinous behavior that led to a lesser charge also accompanied the most serious felony for which the defendant was convicted).  It was appropriate for the court to consider all the actions of defendant in imposing sentence.  See 
People v. Devine
, 98 Ill. App. 3d 914, 925, 424 N.E.2d 823 (1981) (holding that "in evaluating the brutality and heinousness of an offense, the entire spectrum of facts surrounding the given incident must be analyzed and evaluated").  We find that the court considered all aggravating and mitigating evidence before it and found the 70-year term to be appropriate.  
Deaton
, 236 Ill. App. 3d at 547.

Defendant next contends that the court's imposition of consecutive sentences on remand was improper because the court did not find that the sentences were necessary to protect the public as required by section 5-8-4(b) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5-8-4(b) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-4(b))).  The record, however, indicates that the court's imposition of consecutive sentences was pursuant to section 5-8-4(a), which did not require such a finding to be made.  730 ILCS 5/5-8-4(a) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-4(a)).  Section 5-8-4(a) provided, at the time the instant crimes were committed, that a court had discretion in imposing consecutive sentences where multiple offenses were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective and where one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily injury.  Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-4(a).

Defendant also contends that since the imposition of a consecutive sentence to a death sentence was not prohibited, and because the initial judge did not impose a consecutive sentence, the resentencing court was precluded from imposing a consecutive sentence based on principles of double jeopardy and on section 5-5-4 of the Code of Corrections.  730 ILCS 5/5-5-4 (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-4).  Section 5-5-4 of the Code of Corrections provides that where a conviction or sentence is set aside on direct review, a court may not impose a sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence unless the more severe sentence is based upon conduct on the part of defendant occurring after the original sentencing.  730 ILCS 5/5-5-4 (West 1996).

The State concedes that the court had discretion at the original sentencing hearing to impose sentences of imprisonment consecutive to death.  We, however, find that a sentence consecutive to death, under the circumstances presented here, would be barred by our supreme court's opinion in 
People v. Terrell
, 132 Ill. 2d 178, 547 N.E.2d 145 (1989).  As a general matter, section 5-8-4(a) allows the imposition of consecutive sentences in two instances: either (1) when multiple sentences of imprisonment are imposed on a defendant at the same time; or (2) when a term of imprisonment is imposed on a defendant who is already subject to sentence.  730 ILCS 5/5-8-4(a) (West 1996).  In 
Terrell
, the defendant was given the death sentence and a consecutive 60-year term of imprisonment.  The defendant appealed, contending that where he was given only one term of actual imprisonment, consecutive sentences were not authorized by section 5-8-4(a).  The supreme court agreed, holding that a death sentence was not to be considered a term of imprisonment within the meaning of the consecutive sentencing statute.  
Terrell
, 132 Ill. 2d at 229.  The court held that section 5-8-4(a) authorized the imposition of a consecutive sentence only where multiple sentences of imprisonment are imposed, and thus, the sentencing court did not have authority under the statute to order the sentences to run consecutively.  
Terrell
, 132 Ill. 2d at 229-30; see also 
People v. Johnson
, 149 Ill. 2d 118, 158-59, 594 N.E.2d 253 (1992) (holding that where multiple terms of imprisonment are imposed at the same time as a death sentence, the terms of imprisonment may run consecutive to each other but not to the sentence of death).

Defendant also relies upon 
People v. Leger
, 208 Ill. App. 3d 333, 567 N.E.2d 68 (1991), for the proposition that a sentence of imprisonment can run consecutively to a sentence of death.  In 
Leger
, defendant had already been sentenced to death in another case when the court imposed a consecutive term of imprisonment.  Such a result is allowed for under the provision in section 5-8-4(a) that permits consecutive sentences when a term of imprisonment is imposed on a defendant who is already subject to sentence.  730 ILCS 5-8-4(a) (West 1996).

Here, where the court, at the original sentencing hearing, sentenced defendant to death and, simultaneously, to terms of imprisonment, the court did not have authority under section 5-8-4(a) to make the prison terms consecutive to the death sentence.  The sentences were concurrent because the court did not have discretion to impose consecutive sentences at that time.

We are, however
, troubled by the imposition of a consecutive sentence upon remand where the original sentences were to run concurrently, especially in light of the fact that we have found the supreme court's mandate did not order resentencing on the armed robbery and forcible detention counts.  By running the sentences consecutively to the first degree murder term on remand where they were previously to run concurrently, the court effectively increased the amount of time defendant would spend incarcerated for the armed robbery and forcible detention offenses.  Therefore, pursuant to our powers as a court of review under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we order that defendant's sentences for armed robbery and forcible detention be served concurrent to his 70-year sentence for first degree murder.

Defendant, relying on 
People v. Robinson
, 172 Ill. 2d 452, 667 N.E.2d 1305 (1996),
 next argues that he should have been given credit for time served on his sentences for murder and for armed robbery despite the fact that the sentences were made consecutive upon resentencing.  
Because we have already ordered that defendant's sentences are to run concurrently rather than consecutively, it is unnecessary for us to address this argument. We further note that the supreme court, in 
People v. Latona
, 184 Ill. 2d 260, 703 N.E.2d 901 (1998), has rejected defendant's position.

After defendant filed a petition for rehearing with this court, the United States Supreme Court issued its decision in 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  In 
Apprendi
, the Supreme Court held unconstitutional a New Jersey "hate crime enhancement" statute which allowed a judge to increase the sentencing range for an offense where the court found, based on a preponderance of the evidence, that the crime was committed with the purpose of intimidating an individual or group on the basis of a particular characteristic possessed by the individual or group.  
In so ruling, the Supreme Court 
held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum [for the relevant offense] must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Subsequent to the issuance of 
Apprendi
, defendant filed four motions to submit supplemental authority in which he maintained that the consecutive sentencing and extended-term sentencing statutes under which he was sentenced had been rendered unconstitutional by 
Apprendi
.  Those motions were allowed and the State has responded.

The State maintains that defendant has waived any challenge based on 
Apprendi
 by failing to raise such an issue in his original appeal.  The constitutionality of a statute, however, may be challenged at any time (
People v. Wagener
, 196 Ill. 2d 269, 279 (2001)), and we will therefore address defendant's contentions regarding the constitutionality of his sentence under 
Apprendi
.

We first address defendant's contention that the Supreme Court's decision in 
Apprendi
 renders his 70 year extended-term sentence unconstitutional.  
Defendant maintains that the maximum statutory penalty for first degree murder at the time he committed the murder in the instant case was 40 years.  It is true that at the time of the crime in the instant case the applicable section of the Code of Corrections provided for a term in cases of first degree murder of not less than 20 years and not more than 40 years.  Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-1(a)(1)(a).  That same section also provided, however, that if the court found "the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty or that any of the aggravating factors listed in subsection (b) of Section 9-1 of the Criminal Code of 1961" were present, the court could sentence the defendant to a term of natural life imprisonment.  Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-1(a)(1)(b).  Death was also an available penalty for first degree murder if any of the statutory aggravating factors in section 9-1 were proven beyond a reasonable doubt.  Ill. Rev. Stat. 1985, ch. 38, pars. 9-1(b),(f).

A number of Illinois cases have held that the maximum statutory penalty for first degree murder is that set forth in section 5-8-1(a)(1)(a) of the Code of Corrections (730 ILCS 5/5-8-1(a)(1)(a) (West 1996) (stating that a term shall be not less than 20 years and not more than 60 years) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-1(a)(1)(a) (stating a term shall be not less than 20 years and not more than 40 years)))
.  See, 
e.g.
, 
People v. Beachem
, 317 Ill. App. 3d 693, 708, 740 N.E.2d 389 (2000) ("We view 60 years as the prescribed maximum sentence for first degree murder in this State"); 
People v. Armstrong
, 318 Ill. App. 3d 607, 620 (2000) (finding that an 
Apprendi
 violation prevented the sentence from being extended beyond the statutory limit for first degree murder of 60 years).  A number of cases have also found that the imposition of an extended-term sentence or sentence of natural life based on a finding by the trial court that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty violates 
Apprendi
 where such findings are based on a relaxed evidentiary standard.  See 
e.g.
, 
People v. Lee
, 318 Ill. App. 3d 417, 420-23, 743 N.E.2d (2000) (where a sentence of natural life was based upon a finding that the crime was exceptionally brutal and heinous and that finding was not submitted to a jury or proven beyond a reasonable doubt, 
Apprendi
 required the sentence be vacated and the case remanded for resentencing); 
Beachem
, 317 Ill. App. 3d at 708 (extended-term sentence based on a finding of exceptionally brutal and heinous behavior "clearly offends" 
Apprendi
); 
People v. Joyner
, 317 Ill. App. 3d 93, 110, 739 N.E.2d 594 (2000) (imposition of sentence of natural life under section 5-8-1(a)(1)(b) of the Code of Corrections was unconstitutional where it was based on a court's finding that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty without affording the defendant the right to a jury determination of whether the State had proved the fact beyond a reasonable doubt).

Another division of this court, in 
People v. Vida
, No. 1-99-2922, slip op. at 15-25 (June 22, 2001), recently rejected the reasoning of the above cases in favor of reading the statutory sections regarding extended-term sentencing and sentences of imprisonment for a felony together as part of an overall sentencing scheme for murder when determining the statutory range of possible penalties for first degree murder.  Thus, there is a split in authority in this district regarding how the maximum statutory penalty for first degree murder is to be determined.

The State suggests, in its supplemental brief, as it has in a number of other cases, that death is the maximum penalty for all first degree murder cases under Illinois law.  While that position is not particularly persuasive in cases where the death penalty is not sought by the State (see, 
e.g.
, 
People v. Kaczmarek
,
 318 Ill. App. 3d 340, 351-52, 741 N.E.2d 1141 (2000) (rejecting, in a non-capital case, the State's assertion that life imprisonment or the death penalty was the actual statutory maximum penalty for first degree murder), it is unnecessary for us to concern ourselves here with the conflicting approaches taken by the above cases or to decide the validity of the State's position.

In the instant case, we are not dealing with the death penalty as a theoretical maximum punishment for first degree murder.  Here, the Illinois Supreme Court vacated defendant's sentence of death and remanded for a new death eligibility hearing and sentencing hearing on the first degree murder count.  Upon remand, the State again sought the death penalty.  Defendant had, but waived, the right to have a jury determine his eligibility for the death penalty.  Following defendant's jury waiver, the trial court heard evidence and found that the State had proved the aggravating factor necessary for the imposition of the death penalty.  Specifically, the court found defendant eligible for the death penalty pursuant to section 9-1(b)(6) of the Criminal Code of 1961 where it found that defendant had actually killed the victim, that in performing the acts which caused the death of the victim defendant had acted with the knowledge that his acts created a strong probability of death or great bodily harm to the victim, and that the killing occurred in the course of an armed robbery and forcible detention.  Ill. Rev. Stat. 1985, ch. 38, par. 9-1(b)(6).  As discussed earlier, the trial court did not err in making that determination.  Pursuant to statute, the existence of the above aggravating factor was required to be established by the State beyond a reasonable doubt.  Ill. Rev. Stat. 1985, ch. 38, par. 9-1(f).

Thus, the State sought the death penalty and defendant was found to be eligible for the death penalty based on proof beyond a reasonable doubt.  In cases where the State seeks the death penalty and a defendant's eligibility for the death penalty is established based on proof beyond a reasonable doubt, the maximum statutory penalty for first degree murder is death and the maximum sentence of imprisonment is natural life, rather than a term of years.
(footnote: 3)
 In 
People v. Williams
, 317 Ill. App. 3d 945, 958, 742 N.E.2d 774 (2000), the reviewing court concluded that because an aggravating factor making the defendant eligible for the death penalty had been proven beyond a reasonable doubt, there was no violation of the rule set forth in 
Apprendi
 where the trial court relied on that finding in imposing defendant's ultimate sentence of natural life in prison.  Similarly, in 
People v. Jones
, 322 Ill. App. 3d 675, 687 (2001), the court held that where the defendant had, but waived, the right to have a jury decide whether the State had proved him guilty beyond a reasonable doubt of an aggravating factor making him eligible for the death penalty, 
Apprendi
 would not be applied to reverse a sentence of natural life imprisonment imposed pursuant to that aggravating factor.  See also 
People v. Coulter
, 321 Ill. App. 3d 644, 658-59 (2001) (stating in 
dicta
 that where defendant had been found eligible for a death sentence based on proof beyond a reasonable doubt, the sentence of natural life in prison should stand because the finding required by 
Apprendi
 had been made); 
Kaczmarek
, 318 Ill. App. 3d at 352 n.6 (noting that the Illinois death penalty statute conforms to the rule in 
Apprendi
 insofar as it requires the eligibility factors for the imposition of such a punishment to be proved by the State beyond a reasonable doubt).  The court in 
Williams
, 317 Ill. App. 3d at 958, also held that the Supreme Court, in 
Apprendi
, had excluded capital punishment sentencing schemes from 
Apprendi
 analysis.  See also 
Kaczmarek
, 318 Ill. App. 3d at 351 (noting that the Supreme Court, in 
Apprendi
, had specifically limited its holding to noncapital cases).  We acknowledge that the instant case differs slightly from 
Williams
 and 
Jones
 in that the sentencing court in those cases imposed natural life based on the jury's finding that an aggravating factor had been proved beyond a reasonable doubt, where the court in the instant case made an additional finding regarding the brutal and heinous nature of the crime under section 5-5-3.2(b)(2)) (730 ILCS 5/5-5-3.2(b)(2) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-5-3.2(b)(2)) in order to impose an "extended term" sentence under section 5-8-2 (730 ILCS 5/5-8-2(a)(1) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-2(a)(1))). 
 
It is appropriate to note again that 
Apprendi
 is concerned with the removal from the jury of facts that increase the penalty for a crime beyond the prescribed statutory maximum.  
We hold that where a defendant has been found to be eligible for the death penalty based on proof beyond a reasonable doubt, the imposition of any sentence short of death or natural life does not increase the maximum punishment that could be imposed and therefore does not violate 
Apprendi
.  
In the instant case, the trial court, following a jury waiver and based on proof beyond a reasonable doubt, found an aggravating factor under section 9-1 to exist, thus making defendant eligible for the death penalty or a sentence of natural life.  The imposed sentence of 70-years in prison was not a punishment greater than that authorized by the court's findings and the imposition of such a sentence did not, therefore, result in a violation of 
Apprendi
.

We now turn to defendant's contention that the decision in 
Apprendi
 rendered his consecutive sentences unconstitutional.  As set forth earlier, we have, pursuant to our authority under Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), held that defendant's sentences for armed robbery and forcible detention should run concurrent to his sentence for first degree murder.  It is unnecessary, therefore, for us to address defendant's 
Apprendi
 claim regarding consecutive sentencing.  We do note, however, that the Illinois Supreme Court, in 
People v. Wagener
, 196 Ill. 2d 269 (2001), recently addressed the constitutionality of the consecutive sentencing scheme set forth in section 5-8-4 (730 ILCS 5/5-8-4(a) (West 1996) (formerly Ill. Rev. Stat. 1985, ch. 38, par. 1005-8-4)) of the Code of Corrections.  In 
Wagener
, 196 Ill. 2d at 284, the court noted that 
Apprendi
 "explicitly disclaimed any holding regarding consecutive sentencing" and that decisions holding that consecutive sentencing triggered 
Apprendi
 concerns were therefore extending 
Apprendi
 beyond its facts.  The supreme court further noted that sentences which run consecutively to each other are not considered in Illinois to be a single sentence.  
Wagener
, 196 Ill. 2d at 286.  Therefore, because 
Apprendi
 addresses only sentences for individual crimes and consecutive sentences remain discrete, 
Apprendi
 concerns are not implicated by the imposition of consecutive sentences.  
Wagener
, 196 Ill. 2d at 286.  The supreme court's recent holding on this issue is dispositive and this court's previous holdings to the contrary, relied upon by defendant, are no longer good law.

Accordingly, we modify defendant's sentence to provide that his concurrent sentences for armed robbery and forcible detention shall run concurrent to his 70-year sentence for first degree murder rather than consecutive to that sentence.  The judgment of the circuit court is affirmed in all other respects.

Affirmed as modified.

GORDON and COUSINS, JJ., concur.

FOOTNOTES
1:  We note that defendant, in motions to file supplementary authority filed after his petition for rehearing, has also questioned the constitutionality of the court's imposition of an extended-term sentence upon a finding of brutal and heinous behavior.  That contention is addressed later in this opinion.

2:  The constitutionality of imposing an extended-term sentence in instances where a court finds the presence of brutal and heinous behavior under a standard of proof of less than reasonable doubt is presently the subject of a split in authority within the divisions of the First District.  Compare, 
e.g.
, 
People v. Beachem
, 317 Ill. App. 3d 693, 740 N.E.2d 389 (2000), with 
People v. Vida
, No. 1-99-2922 (June 22, 2001).  

3:  In so holding, we note our disagreement with the court in 
Beachem
, 317 Ill. App. 3d at 708, where, although the defendant 
was apparently found to be death eligible, the court determined that the prescribed maximum sentence for first degree murder was 60 years rather than death.