**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210161-U

Order filed May 11, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0161 Circuit No. 17-CF-2387 |
| | ) | |
| JASON C. ERRICHETTO, | ) ) | Honorable Daniel Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justices McDade and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not err in imposing an extended sentence. Defendant's multiple convictions violated the one-act, one-crime rule.

¶ 2     Defendant, Jason C. Errichetto, appeals his extended-term sentence, arguing (1) the State failed to prove beyond a reasonable doubt his conduct was accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty, and (2) several of his convictions should be vacated pursuant to the one-act, one-crime rule. We vacate several of defendant's convictions but otherwise affirm.

I. BACKGROUND

¶ 4        Defendant was charged with attempted first degree murder (count I) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)), three counts of aggravated domestic battery: causing great bodily harm (count II), causing permanent disability (count III), and causing permanent disfigurement (count IV) (*id.* § 12-3.3(a)); four counts of aggravated battery: causing great bodily harm (count V), causing permanent disability (count VI), causing permanent disfigurement (count VII), and causing bodily harm while on a public way (count VIII) (*id.* § 12-3.05(a)(1), (c)); and one count of domestic battery (count IX) (*id.* § 12-3.2(a)(2)).

¶ 5        The case proceeded to a bench trial on August 3, 2020. The evidence presented at trial established that on November 30, 2017, at approximately 7 a.m., Rockdale Police Officer John Borgens was dispatched to assist a woman who had been found on the roadway outside the fence at a bar known as the Untamed Motorcycle Club (the clubhouse).[1] The woman, later identified as Michelle Astrowski, had a jacket placed on top of her, and her pants were pulled down below her buttocks. Astrowski was transported to the hospital for serious injuries. Defendant and Astrowski had been dating for several months at the time of the incident.

¶ 6        Carol Cleaver testified that she worked with Astrowski at RJ's bar. On the night of November 29, 2017, Cleaver testified she was not working but was at RJ's while Astrowski worked. She stated that defendant was at RJ's and seemed upset with Astrowski before leaving shortly after midnight. Approximately 15 minutes later, Astrowski asked Cleaver to close the bar for her and left in her own car.

¶ 7        The State introduced silent video footage from two security cameras from the clubhouse. One camera depicted a fenced-in concrete pad outside the entrance to the clubhouse and the other

---

[1]The witnesses referred to the bar as "the clubhouse" so we will continue to do so for consistency.

camera depicted inside the clubhouse. Defendant arrived at the clubhouse shortly after midnight. Astrowski arrived at 12:49 a.m. and was let in by defendant. They drank alcoholic beverages and talked in the clubhouse until approximately 2:02 a.m. when Astrowski exited and defendant followed her. Seconds later, the outside security footage showed a cell phone slide on the concrete pad and defendant retrieved it.

¶ 8     Over the next 30 minutes, defendant was mostly out of frame but could occasionally be seen in the bottom right corner of the footage. During this time, defendant walked outside of the fenced-in area and back several times before he drove Astrowski's vehicle onto the concrete pad. Defendant was then seen in the bottom right corner of the video again before he parked the vehicle outside of the fenced-in area.

¶ 9     Defendant is then seen again in the bottom right corner of the footage dragging Astrowski across the concrete pad. Defendant spent four minutes dragging Astrowski, falling over himself twice, and stopping occasionally to talk and kick her several times. Defendant then left Astrowski on the ground outside the fenced-in area after closing the gate at approximately 2:45 a.m. Astrowski was discovered shortly before 7 a.m. None of defendant's actions depicted on the recording account for Astrowski's most serious injuries to her head.

¶ 10     The parties stipulated that, if called to testify, the emergency room physician would state that Astrowski suffered several skull fractures with a hole in the rear of her skull; fractures and severe bruising to her face; severe road rash to her back, buttocks, and thighs; bruising to both forearms; and bruises and cuts on both knees.

¶ 11     Ilona Nie, Astrowski's mother, testified that Astrowski arrived at the hospital on November 30, 2017, and was transferred to a rehabilitation center on December 18, 2017. Astrowski remained at the rehabilitation center for two months. While at the rehabilitation center, Nie explained

3

Astrowski could not move due to a plate on the side of her head. Nie also testified that the rehabilitation center helped Astrowski with her speech and physical therapy to teach her how to eat and walk. After leaving the rehabilitation center, Astrowski received outpatient rehabilitation therapy three to four times a week and underwent surgery on her skull on March 11, 2018. Since the incident, Astrowski had not been able to live by herself, had trouble with her eyes, could not hear out of one ear, had a scar on her forehead, and became confused when talking.

¶ 12        The court found defendant not guilty of attempted first degree murder but guilty of the remaining charges. Following a sentencing hearing, defendant was sentenced to an extended term of 11 years' imprisonment for counts II through IV, and concurrent 3-year sentences for counts V through IX. The court found each of these offenses was accompanied by brutal and heinous behavior indicative of wanton cruelty. In support of the extended sentence, the court stated:

> "I think one of the things I found most troubling in the facts of this case—I don't know what happened exactly, as to how [Astrowski] in this case ended up in the original condition she was in because it's not on video, nobody testified.
>
> But what was on the video frankly disturbed me tremendously and what was on the video was that the defendant after whatever happened didn't offer her any aid. He didn't offer her any help. He didn't call anybody. He drug her across a parking lot, placed her outside of a fence in what, in fact, were freezing cold conditions and left her there."

¶ 13        Defendant filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial, which was denied. Defendant then filed a motion to reconsider the sentence, asserting the State failed to prove beyond a reasonable doubt defendant's conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Defendant

4

argued there was no evidence of premeditation, of what precipitated the incident, or of the actual temperature the day of the incident. Defendant also argued the sentence was otherwise excessive and improper because the court failed to tailor the sentence "with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11.

¶ 14 The court denied defendant's motion to reconsider the imposition of the extended sentence but reduced his sentence from 11 to 10 years' imprisonment, giving more weight to the statements in mitigation. The court found that while there was no specific testimony regarding the temperature on the day of the incident, the videotape demonstrated it was a cold night out as the parties were "bundled up," their breath was visible, and frost formed on the grass. Defendant appealed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant argues (1) the State failed to prove beyond a reasonable doubt that his conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty so as to support an extended-term sentence on his conviction for aggravated domestic battery, and (2) his convictions violate the one-act, one-crime rule as they were based on the same conduct. We consider each of these arguments in turn.

¶ 17 A. Extended Sentence

¶ 18 Aggravated domestic battery is a Class 2 felony which carries a sentence of not less than three years and not more than seven years. 730 ILCS 5/5-4.5-35(a) (West 2016). However, if the offense is accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, the circuit court may impose an extended-term sentence of up to 14 years' imprisonment. *Id.* § 5-5-3.2(b)(2). This finding must be proven beyond a reasonable doubt. *People v. Nitz*, 219 Ill. 2d 400, 409 (2006). On review, when considering a challenge to the sufficiency of the evidence for a finding of exceptionally brutal or heinous behavior, we view the evidence in the light most

5

favorable to the prosecution and determine whether any rational trier of fact could have concluded that the finding was proven beyond a reasonable doubt. See *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *People v. Swift*, 202 Ill. 2d 378, 392 (2002); *People v. Holman*, 2014 IL App (3d) 120905, ¶ 62.

¶ 19    "To qualify for a finding of exceptionally brutal or heinous behavior, defendant's conduct must be both: (1) exceptionally brutal or heinous; and (2) indicative of wanton cruelty." *Holman*, 2014 IL App (3d) 120905, ¶ 63. "The term 'brutal' is defined as cruel and cold-blooded, grossly ruthless, or devoid of mercy or compassion; the term 'heinous' is defined as enormously and flagrantly criminal, hatefully or shockingly evil, or grossly bad; and the term 'wanton cruelty' is defined as consciously seeking to inflict pain and suffering on the victim of the offense." *Id.*

¶ 20    " '[T]he extended-term provision was not intended to convert every offense into an extraordinary offense subject to an extended-term sentence.' " *Id.* (quoting *People v. Pugh*, 325 Ill. App. 3d 336, 346 (2001)). However, a single act that causes injury may be sufficient to demonstrate the existence of wanton cruelty. *Pugh*, 325 Ill. App. 3d at 346. "When assessing the brutality and heinousness of a crime, the trier of fact must consider all of the facts surrounding the incident in question, and each case must be decided on its own facts." *Holman*, 2014 IL App (3d) 120905, ¶ 63. Several factors that courts have considered in determining whether behavior is exceptionally brutal or heinous and indicative of wanton cruelty include:

> "whether the offense was premeditated, whether the defendant was provoked to act, the senseless nature of the act, the number of wounds inflicted, the danger created by the act, the extent of the injury inflicted, whether the defendant exhibited remorse, whether the defendant inflicted prolonged pain or torture, whether defendant shot the victim at close range, and whether defendant inflicted mental

suffering on the victim. [Citation.] In addition, although cases in which exceptionally brutal or heinous behavior has been found to be present have generally involved prolonged pain, torture, or premeditation, the presence of such conduct is not required for a finding of exceptionally brutal or heinous behavior to be made." *Id.*

¶ 21     First, defendant argues the court failed to make the correct finding because it stated defendant's behavior was "brutal or heinous indicative of wanton cruelty" but did not state that it was "exceptionally" so. This issue was never raised in the circuit court, and so it is forfeited. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Even if defendant had not forfeited the issue, it is without merit. There is no requirement that the court articulate its express finding that the crime was exceptionally brutal and heinous. *People v. Keller*, 267 Ill. App. 3d 602, 610 (1994). Moreover, the court is presumed to know the law and apply it properly. *People v. Howery*, 178 Ill. 2d 1, 32 (1997). The court found the conduct "brutal or heinous indicative of wanton cruelty" after significant briefing and argument on the matter. The court knew the law and its failure to expressly use the word "exceptionally" does not indicate any error. See *Keller*, 267 Ill. App. 3d at 610.

¶ 22     Second, defendant argues the State failed to prove beyond a reasonable doubt defendant's conduct was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. Viewing the evidence in the light most favorable to the prosecution, we believe a rational trier of fact could conclude an extended sentence was appropriate. Here, defendant's conduct reflects a complete lack of mercy or compassion and shows that he consciously sought to inflict pain on Astrowski. After striking Astrowski with such force as to render her unable to stand and causing serious and permanent injury, he left her on the ground for over half an hour before dragging her limp body across concrete. While dragging her across the concrete, causing serious

7

road rash, defendant stopped to kick Astrowski multiple times. Astrowski was left outside in freezing cold conditions for over four hours before being found and taken to the hospital where she remained for nearly three weeks. After the incident, defendant showed no remorse or concern for what he had done and did not attempt to help Astrowski. See *Holman*, 2014 IL App (3d) 120905, ¶ 64. At the time of trial, Astrowski continued to suffer physically and mentally as a result of this attack, years later. We, therefore, believe defendant's senseless acts of violence could rationally be classified as exceptionally brutal or heinous behavior indicative of wanton cruelty. Additionally, we recognize the infliction of great bodily harm or permanent disability was inherent in the charge against defendant, but "[s]ome behavior is so much more brutal or heinous and so clearly indicative of wanton cruelty that it qualifies a defendant for extended term even if it is the predicate act of the offense." *People v. Yarbrough*, 156 Ill. App. 3d 643, 648 (1987). The facts of this case clearly exemplify this. Thus, taking the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the acts in this case were accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. See *Holman*, 2014 IL App (3d) 120905,¶ 64 (upholding such a finding where the defendant attacked his much older and smaller uncle, pressed his thumbs into the victim's eyes, and failed to show remorse or call for help).

¶ 23     In coming to this conclusion, we reject defendant's reliance on *People v. Reiner*, 251 Ill. App. 3d 1065 (1993), where this court held that the defendant's actions were not exceptionally brutal or heinous indicative of wanton cruelty. There, following a conversation, the defendant punched the victim once in the side of the head and then ran away. *Id.* at 1066. This conduct cannot be equated to the behavior exhibited by defendant, here. Defendant struck Astrowski with such force that she became unresponsive. He then dragged her barely conscious or unconscious body

8

across concrete, continuing to kick her as she laid on the ground, and left her outside in freezing cold conditions.

¶ 24                                    B. One-Act, One-Crime Rule

¶ 25        Defendant additionally argues, and the State agrees, that counts III, IV, V, VI, VII, and IX should be vacated pursuant to the one-act, one-crime rule. A defendant may not be convicted of multiple offenses that are based on precisely the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). Where multiple convictions derive from a single physical act, a court should impose a sentence on the more serious offense and vacate the less serious offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 26        As acknowledged by defendant, neither trial nor posttrial counsel preserved this one-act, one-crime issue for appellate review by raising it in a posttrial motion. *Enoch*, 122 Ill. 2d at 186. However, a one-act, one-crime violation is a reversible plain error because the error affects the defendant's substantial rights. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). Here, the parties agree that all of the counts, except for count VIII, arise from the same act of striking Astrowski about her body. During sentencing, the court indicated that count II was the most serious of the offenses. We, therefore, vacate defendant's convictions for counts III, IV, V, VI, VII, and IX.

¶ 27                                         III. CONCLUSION

¶ 28        The judgment of the circuit court of Will County is affirmed in part and vacated in part.

¶ 29        Affirmed in part and vacated in part.