(No. 84102.—
(No. 84125.—

(No. 84221.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN LATONA, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ANZIO R. MARTINEZ, Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.* DEPARTMENT OF CORRECTIONS, Petitioner, v. HON. AMY M. BERTANI *et al.*, Respondents.

*Opinion filed November 19, 1998.*

James E. Ryan, Attorney General, of Springfield, and Daniel A. Fish, State's Attorney, of Dixon (Barbara A. Preiner, Solicitor General, Sally A. Swiss, Assistant Attorney General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Mary Beth Burns, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

G. Joseph Weller, Deputy Defender, and Kim M. DeWitt, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for appellee.

James E. Ryan, Attorney General, of Springfield, and Joseph E. Birkett, State's Attorney, of Wheaton (Barbara A. Preiner, Solicitor General, Sally A. Swiss, Assistant Attorney General, of Chicago, and Norbert J. Goetten, Martin P. Moltz and Mary Beth Burns, of the Office of the State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

Andrea Becker, of the Office of the State Appellate Defender, of Oak Park, for appellee.

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Sally A. Swiss, Assistant Attorney General, of Chicago, of counsel), for petitioner.

James P. Carey, of Chicago, for respondent Hon. Amy M. Bertani.

G. Joseph Weller, Deputy Defender, and Kim M. DeWitt, Assistant Defender, of the Office of the State Appellate Defender, of Elgin, for respondent Larry Williams.

JUSTICE HARRISON delivered the opinion of the court:

The central issue presented for our review in these three consolidated appeals concerns the interrelationship and proper application of sections 5—8—7(b) and 5—8—4(e)(4) of the Unified Code of Corrections (Code) (730

ILCS 5/5—8—7(b), 5—8—4(e)(4) (West 1994)) in a determination of custodial sentence credit for defendants sentenced to consecutive sentences. Subsidiary issues include the propriety of the circuit court's order amending the mittimuses of defendant Larry Williams and of the severity of the sentences imposed upon defendant Anzio Martinez.

In cause No. 84102, defendant, John Latona, was charged in the circuit court of Lee County with solicitation of murder and solicitation of murder for hire in violation of sections 8—1.1(a) and 8—1.2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1989, ch. 38, pars. 8—1.1(a), 8—1.2(a)). At the time the crimes allegedly took place, defendant was an inmate at the Dixon Correctional Center, serving an unrelated sentence for murder. A warrant was served on defendant at the correctional facility on July 31, 1989, the same day the charges were filed. As shown on the face of the warrant, bail was set in the amount of $500,000. Defendant did not post bail.

Defendant appeared in the circuit court several times on pretrial matters from July 1989 to January 8, 1990. Docket entries indicate that defendant was accompanied by Department of Corrections personnel in each instance and he was remanded to the Department of Corrections at the conclusion of the day's proceedings. On December 27, 1989, the trial court suppressed certain incriminating statements defendant had made to an undercover police officer in Dixon Correctional Center. The State appealed. The appellate court reversed and remanded the cause for further proceedings. *People v. Latona*, 218 Ill. App. 3d 1093 (1991).

On remand, the trial court dismissed the count alleging solicitation of murder for hire, and the remaining count was tried before the court. Defendant was found guilty of solicitation of murder, and the matter was set

over for sentencing. Having served his sentence of imprisonment on the prior murder conviction, defendant was released from the custody of the Department of Corrections in June of 1992. He was immediately taken into the custody of Lee County authorities pursuant to an order of the circuit court entered on June 2, 1992. On July 8, 1992, defendant was sentenced to 40 years' imprisonment. Defendant appealed. The appellate court affirmed defendant's conviction, but vacated his sentence and remanded the cause for a new sentencing hearing. *People v. Latona*, 268 Ill. App. 3d 718 (1994).

Defendant was resentenced to 36 years' imprisonment. A sentencing order entered May 31, 1995, indicates that the 36-year sentence was to be served consecutively to the defendant's prior sentence for murder. Defendant was given credit for time he had served in county custody after his release from prison on the murder conviction. An amended sentencing order entered June 9, 1995, specified that defendant was not to receive credit for time served on the sentence for murder.

Defendant again appealed, arguing that: (1) the trial court had considered an improper aggravating factor in sentencing, and (2) the court had erred in denying him credit for time he had spent in custody in the county jail on the solicitation charge following his release from the Department of Corrections. The appellate court concluded that defendant's first issue was meritorious and reduced his sentence to 30 years. The court did not address defendant's second issue. *People v. Latona*, No. 2—95—0947 (unpublished order under Supreme Court Rule 23).

Defendant petitioned for leave to appeal to this court. Although that petition was ultimately denied, this court issued an order in the exercise of its supervisory authority, remanding the cause to the appellate court "to address the question of whether and to what extent defen-

dant is entitled to credit for time served in custody prior to conviction, or to explain why the question cannot be reached." *People v. Latona*, 173 Ill. 2d 536 (1997).

In response, the appellate court issued a supplemental order on September 19, 1997, briefly discussing section 5—8—7(b) of the Unified Code of Corrections (730 ILCS 5/5—8—7(b) (West 1994)) and this court's opinion in *People v. Robinson*, 172 Ill. 2d 452 (1996). The appellate court determined that the "basis of defendant's custody" was, for periods of time, "ambiguous." The panel held that the trial court had "erred in denying credit for time served in custody awaiting trial, sentencing and resentencing on his conviction for solicitation of murder," concluding that the cause should be remanded for a determination of "the number of days credit the defendant is to receive." Indeed, with respect to the offense of solicitation, the time spent in county custody, and the basis for that custody, are matters unclear from the record in this case.

In any event, following the appellate court ruling, the State timely filed a petition for leave to appeal to this court pursuant to Supreme Court Rule 315 (166 Ill. 2d R. 315). This court granted that petition on December 3, 1997.

In cause No. 84125, defendant, Anzio Martinez, pled guilty to attempted murder and armed robbery in the circuit court of Du Page County. The trial court sentenced defendant to consecutive terms of 30 years' imprisonment for the attempted murder and 15 years' imprisonment for the armed robbery. The defendant appealed and the appellate court remanded for trial counsel's failure to comply with the certification requirements of Supreme Court Rule 604(d) (145 Ill. 2d R. 604(d)). On remand, defense counsel filed an obligatory certificate, and the trial court subsequently denied defendant's motion to reconsider sentence.

When the cause again came before the appellate court, the court rejected defendant's contention that his sentences were excessive, but determined that the trial court had erred when it failed to grant him a 379-day credit against each sentence for the 379 days he had spent in custody prior to sentencing, citing our decision in *Robinson*, 172 Ill. 2d 452. The appellate court modified the judgment of the circuit court, allowing defendant a 379-day credit on each of his consecutive sentences. *People v. Martinez*, No. 2—95—0165 (unpublished order under Supreme Court Rule 23).

The State subsequently filed a timely petition for leave to appeal pursuant to Supreme Court Rule 315 (166 Ill. 2d R. 315) which this court granted on December 3, 1997. The cause was consolidated with *Latona* for review because of a similar sentence-credit issue presented therein.

In considering the issue of presentence custodial credit in the context of consecutive sentencing, we begin with an examination of the relevant statutes.

Section 5—8—4(e) of the Code provides in pertinent part:

"In determining the manner in which consecutive sentences of imprisonment *** will be served, the Department of Corrections shall treat the offender as though he had been committed for a single term with the following incidents:

\* \* \*

(4) the offender shall be awarded credit against the aggregate maximum term and the aggregate minimum term of imprisonment for all time served in an institution since the commission of the offense or offenses and as a consequence thereof ***." 730 ILCS 5/5—8—4(e) (West 1996).

Section 5—8—7(b) of the Unified Code of Corrections provides:

"The offender shall be given credit on the determinate sentence *** for time spent in custody as a result of the of-

fense for which sentence was imposed ***." 730 ILCS 5/5—8—7(b) (West 1996).

Simply put, the issue before us is whether a defendant sentenced to consecutive sentences is entitled to two days' sentence credit—one for each sentence—on account of one day actually spent in presentence, county custody as a result of the charged offense or offenses. All districts of the appellate court have now addressed this issue. The First, Third, Fourth and Fifth Districts have rejected a statutory construction which would entitle such a defendant to two days' credit. *People v. Biggs*, 294 Ill. App. 3d 1046 (1st Dist. 1998); *Johnson v. Washington*, 294 Ill. App. 3d 472 (3d Dist. 1998); *Feazell v. Washington*, 291 Ill. App. 3d 766 (4th Dist. 1997); *People v. Plair*, 292 Ill. App. 3d 396 (5th Dist. 1997). The Second District has adopted that construction. *People v. Johnson*, 286 Ill. App. 3d 597 (2d Dist. 1997).

We begin our analysis with a review of rules pertaining to statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. *In re A.P.*, 179 Ill. 2d 184, 195 (1997); *People v. Robinson*, 172 Ill. 2d 452, 457 (1996); *Maloney v. Bower*, 113 Ill. 2d 473, 479 (1986). The most reliable indicator of legislative intent is the language of the statute itself. *Robinson*, 172 Ill. 2d at 457. In determining legislative intent, a court may consider the reason and necessity for the statute, the evils to be remedied, and the objectives to be attained. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 479 (1997); *People v. Bole*, 155 Ill. 2d 188, 195 (1993). In ascertaining the legislature's intent, this court has a duty to avoid a construction of the statute that would defeat the statute's purpose or yield an absurd or unjust result. *Cummins*, 178 Ill. 2d at 479; *Bole*, 155 Ill. 2d at 195. Where, as here, a court is faced with the construction of two statutes whose purview may overlap to some degree, a specific statutory provision shall control over a

general provision on the same subject. *People v. Villarreal*, 152 Ill. 2d 368, 379 (1992).

We will first examine section 5—8—7(b) of the Code, which we have previously construed under other circumstances. The credit requirement of section 5—8—7(b) is meant to account for all time served in confinement for a particular offense. *People v. Scheib*, 76 Ill. 2d 244, 250 (1979). This court has stated that the purpose of the "credit-against-sentence" provision contained in section 5—8—7(b) is to ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences. *People v. Ramos*, 138 Ill. 2d 152, 159 (1990), citing *People v. Hughes*, 167 Ill. App. 3d 265 (1988).

In *Robinson*, we applied section 5—8—7(b) in the context of a defendant who had been simultaneously in custody to some extent while awaiting trial and sentencing on two unrelated charges. There, we determined that defendant should receive sentence credit on both offenses for each day he spent in simultaneous custody and additional credit against each sentence for time spent in custody on that offense only. *Robinson*, 172 Ill. 2d at 454-56, 463. Our rule in *Robinson* will ensure that a defendant who is in simultaneous, presentence custody on separate offenses does not serve time in excess of his sentence to the extent his sentences are served concurrently. However, in *Robinson*, we were not called upon to consider the impact that section 5—8—4(e)(4) of the Code would have on the calculation of sentence credit for consecutive sentences.

Section 5—8—4(e)(4) of the Code specifically governs the calculation of consecutive sentences and impacts upon the application of sentence credit; therefore, it controls over section 5—8—7(b), which would otherwise, generally, apply to calculations of credit. See *Villarreal*, 152 Ill. 2d at 379. Section 5—8—4(e)(4) requires the

Department of Corrections to treat consecutive sentences as a "single term" of imprisonment, and specifies that the offender shall be credited against that "aggregate *** term of imprisonment" for all time "served in an institution since the commission of the offense or offenses and as a consequence thereof." 730 ILCS 5/5—8—4(e)(4) (West 1994). Since consecutive sentences are to be treated as a single term of imprisonment, it necessarily follows that defendants so sentenced should receive but one credit for each day actually spent in custody as a result of the offense or offenses for which they are ultimately sentenced. While a defendant sentenced to concurrent sentences receives credit for time served against *each* sentence, because the sentences are served concurrently, the credits are applied in that manner as well. However, to allow an offender sentenced to consecutive sentences two credits—one for each sentence—not only contravenes the legislative directive that his sentence shall be treated as a "single term" of imprisonment, but also, in effect, gives that offender a double credit, when the sentences are aggregated, for each day previously served in custody. That cannot be what the legislature intended.

By enacting provisions relating to consecutive sentencing, the legislature sought to punish the commission of certain offenses more harshly. See *People v. Curry*, 178 Ill. 2d 509, 539 (1997). Allowing offenders sentenced to consecutive sentences a double credit for each day of actual custody would frustrate the legislature's clearly expressed intent.

Therefore, to the extent that an offender sentenced to consecutive sentences had been incarcerated prior thereto on more than one offense simultaneously, he should be given credit only once for actual days served. To the extent that he spent *additional*, nonsimultaneous time in presentence custody on one offense or the other, he should be afforded a single credit for that time as

well. Defendants must be given credit for all the days they actually served, but no more.

Applying these principles to Latona, we hold that defendant should be given credit for any time served in county custody between his release from prison and sentencing on the instant offenses, as well as any additional time in county custody thereafter. Defendant Martinez should be given but one credit of 379 days toward his aggregate sentence.

Therefore, although we reject the reasoning of the appellate court's supplemental order in *Latona*, and vacate that judgment, we agree that cause must be remanded to the circuit court for a determination of the number of days of credit defendant Latona is to receive for time spent in county custody. We remand *Latona* to the circuit court for proceedings consistent with views herein expressed. With respect to this issue, we reverse the judgment of the appellate court in *Martinez* and affirm the judgment of the circuit court.

Defendant Martinez raises a separate issue, claiming that the trial court abused its discretion in imposing consecutive sentences of 15 and 30 years' imprisonment for armed robbery and attempted murder, respectively. Specifically, defendant argues that the trial court abused its discretion by failing to consider his rehabilitative potential and imposed a sentence disproportionate to the consecutive sentences of six and nine years received by his codefendant.

We note that the trial court is the proper forum to determine a sentence and the trial judge's decision in sentencing is entitled to great deference and weight. *People v. La Pointe*, 88 Ill. 2d 482, 492-93 (1981). It is the province of the trial court to balance relevant factors and make a reasoned decision as to the appropriate punishment in each case. *People v. Streit*, 142 Ill. 2d 13, 21 (1991). Defendant's sentencing issue has already been

considered and rejected by the appellate court. *Martinez,* No. 2—95—0165 (unpublished order under Supreme Court Rule 23). We concur in the appellate court's analysis and conclusion.

Defendant planned the robbery of the victim and arranged the meeting during which the crime was committed. He and codefendant, Balkcom, met the victim at the victim's garage, where defendant struck the victim on the head at least four times with a hammer defendant had brought for that purpose. Defendant and Balkcom then took the victim's money, pager and the keys to his car. The victim was found approximately three hours later lying on the floor of the cold garage in a pool of blood. He had spent over 50 days in the hospital as of the date of defendant's sentencing and had not regained some of his motor skills or full use of the left side of his body.

In sentencing defendant, the trial court examined all of the evidence, both mitigating and aggravating. The court determined that a severe penalty was warranted due to the callousness and brutality with which defendant committed the crimes. We believe the record supports that determination.

Furthermore, we find that the disparity between the sentences of defendant and Balkcom is justified by the nature and extent of defendant's greater participation in the crime. Defendant was obviously the moving force in the commission of the crime and played the more active role. A more severe sentence is warranted on that basis. See *People v. Caballero,* 179 Ill. 2d 205, 216 (1997); *People v. Godinez,* 91 Ill. 2d 47, 55 (1982). Moreover, Balkcom pled guilty and agreed to testify against defendant. We conclude that the trial court acted within its discretion when it imposed consecutive sentences of 15 and 30 years. Consequently, we affirm the judgment of the appellate court on this issue.

Finally, we address the Department of Correction's petition for writ of *mandamus* in cause No. 84221. On November 30, 1995, defendant, Larry Williams, pled guilty to felony theft and possession of a stolen motor vehicle and was sentenced by the circuit court to consecutive prison terms of two years and six years, respectively, pursuant to a plea agreement by which defendant was also given credit for a total of 197 days' presentence custody, 125 days' credit toward the former sentence and 72 days' credit on the latter. The record is unclear—and the parties shed no light—on how the sentence credit was calculated. Initially, the court stated that defendant would be given 197 days' sentence credit on each sentence, but was later advised by defense counsel that the agreement contemplated 197 days "for both cases together." The court then gave defendant credit for 197 days "actually served."

In March of 1996, the judge began receiving letters from defendant in which defendant expressed his well-founded concerns that he was not being credited on each of his sentences. From letters which appear in the record, it seems that the Department of Corrections was giving only 125 days' credit toward his aggregate sentence. The record on appeal indicates that the judge and the attorneys for the State and defense addressed the sentence-credit problem in seven subsequent court proceedings.

In one instance, on June 4, 1996, Assistant State's Attorney Lea Norbut announced her belief that the parties would eventually resolve the sentence-credit issue by "an agreed order." Norbut indicated she had consulted with Department personnel about the problem. Prior to rescheduling the matter for yet another court date, the court expressed obvious frustration with the Department:

"They're not following what the mittimus says. I don't know what the solution is. *** I'm not going to change the law because somebody doesn't want to follow it."

According to a docket entry dated June 25, 1996, the judge on that date determined that the mittimus was correct and defendant would have to "take the problem up with the Illinois Department of Corrections." However, in the transcript of proceedings on that day, Assistant State's Attorney Norbut advised that she had spoken with the Department's legal counsel, Rachel McKenzie, who told Norbut that she did not deal with "bookkeeping procedure" and sentence-credit issues were handled by the "particular facility." Norbut said McKenzie had no idea how to rectify the problem. The judge rescheduled the case for status hearing on July 30, 1996, and her concluding remarks in the courtroom suggested that the parties agree upon wording for an amended mittimus by that date.

On July 30, 1996, the problem and parties were again before the court. On that date, Assistant State's Attorney Norbut represented to the court that she had been advised by various individuals employed by the Department of Corrections, including Jan Day, a records officer, Day's supervisor and Rachel McKenzie of the legal department, as to the proper wording of an amended mittimus that would effectuate the original intent of the court and the parties. Based upon that advice, Norbut and Assistant Public Defender Mary Rosiek-Cardin agreed upon language to be included in an order addressing the problem and authorizing the preparation of an amended mittimus in each case. An amended mittimus was in fact prepared in each case on July 30, 1996. The amended mittimus in cause No. 95—CF—5461 stated that defendant was to receive as credit against his six-year sentence "credit for 72 days actually served with credit for 72 days good time for a total of 144 days total to be aggregated to credit in 94 CF 5886." The amended mittimus in cause No. 94—CF—5886 stated that defendant was to receive as credit against his two-year sentence

"credit for 125 days actually served with credit for 125 days good time for a total of 250 days total to be aggregated to credit in 95 CF 5461."

On June 16, 1997, Cardin again appeared before the judge, this time with Assistant State's Attorney Susan Gerber, advising that defendant's transfer from Dixon Correctional Center to Robinson Correctional Center had engendered another intrainstitutional credit crisis among Department clerical employees concerned with such matters, and thus, Robinson Correctional Center was "not honoring the Court order." Cardin advised the court, "We put in the court order exactly what Dixon wanted." The judge directed Cardin to "sit down with the clerk and make sure [each mittimus was] worded exactly" in conformance with the court's prior order. The resulting amended mittimus of June 19, 1997, in cause No. 95—CF—5461 refers to a six-year sentence and states that defendant is to be "given credit for 72 days actually served with credit for 72 days good time ordered to apply for a total of 144 days. This time actually served and good time credit to be aggregated to 125 days time actually served and 125 days good time credit in 94 CF 5886." The amended mittimus in cause No. 94—CF—5886 refers to a two-year sentence "consecutive to 95 CF 5461" with defendant to receive "credit for 125 days actually served with credit for 125 days good time ordered to apply for a total of 250 days. This time actually served and good time credit to be aggregated to 72 days time actually served and 72 days good time credit in 95 CF 5461."

On October 20, 1997, the Illinois Department of Corrections filed with this court a motion for leave to file a petition for an original writ of *mandamus* challenging what the Department argues is a double credit to defendant ordered by the circuit court in this case. We granted the Department's motion on December 3, 1997. On that date this court also granted leave to appeal in People v.

Latona, No. 84102, and People v. Martinez, No. 84125. This case was consolidated with Latona and Martinez for review only because of the similar sentence credit issue presented therein.

We note at the outset of our analysis that issuance of a writ of *mandamus* is an extraordinary remedy, discretionary in nature and appropriate only where there is a clear right to the requested relief, a clear duty of the respondent to act, and clear authority in the respondent to comply with the writ. *Orenic v. Illinois State Labor Relations Board*, 127 Ill. 2d 453, 467-68 (1989); *League of Women Voters v. County of Peoria*, 121 Ill. 2d 236, 242-43 (1987). We may consider a petition for writ of *mandamus* when it presents an issue that is novel and of crucial importance to the administration of justice, even if all the normal requirements for the writ's award are not met initially. *Orenic*, 127 Ill. 2d at 468.

The Department requests that this court grant a writ of *mandamus* "directing the circuit court to vacate the orders awarding defendant Williams aggregate in-custody credit." According to the Department, *mandamus* is warranted because: (1) the issue of aggregate sentence credit is one of considerable importance to the administration of justice; (2) the trial court's orders were not in conformance with statutory requirements; (3) the court's orders are void in that it no longer had jurisdiction when the orders were entered; and (4) the court lacked jurisdiction over the Department in any event. We will address these contentions in order and only to the extent necessary for our disposition.

While our consideration of the issue of aggregate sentence credit in the context of consecutive sentencing evinces our determination that the matter is, as the Department suggests, "of importance to the administration of justice," that does not mean *mandamus* is appropriate here. The issue has now been resolved. Conse-

quently, that factor does not figure prominently in our decision.

As we have previously stated in the course of our factual recitation, it is unclear from the record whether the separate sentence credits given defendant Williams in each case correspond to entirely separate periods of incarceration or whether there were periods of time when defendant was in simultaneous custody for both offenses and he may have received overlapping sentence credit to some extent. Given the state of the record before us, we see no *clear* evidence that the circuit court's credit calculations are incorrect or that its orders would result in an erroneous application of the provisions of section 5—8—4(e)(4) of the Code. *Mandamus* will not lie where the Department has not demonstrated a clear right to the relief requested. *Orenic*, 127 Ill. 2d at 467-68.

We turn next to consider the Department's contention that the circuit court's orders were void because the court no longer had jurisdiction when the orders were entered. We disagree. Jurisdiction to modify the original judgment was not necessary because the original judgment was not modified.

While a court may not *modify* its judgment after it has lost jurisdiction of a case, it may *correct* the record to make it accurately reflect the judgment that was in fact entered. *People v. Adams*, 144 Ill. 2d 381, 394 (1991); *People v. Glenn*, 25 Ill. 2d 82, 85 (1962). The power to do so extends to the amendment of a mittimus (*Baker v. Department of Corrections*, 106 Ill. 2d 100, 106 (1985)), which can be accomplished at any time (*People v. Anderson*, 407 Ill. 503, 505 (1950)). The circuit court had the authority to enter an order amending the mittimus in each case to reflect that which was previously done and to implement the judgment it had originally entered. That is what the court did.

In summary, the circuit court presided over defen-

dant Williams' negotiated plea and sentence on November 30, 1995. At that time, the defense and the State agreed that Williams was to receive 197 days' total sentence credit for actual days served. The court concurred in the plea agreement and sentenced defendant accordingly. A mittimus was prepared in each case, allowing defendant a 72-day credit in one case and a 125-day credit in the other. Subsequently, it was discovered that the Department of Corrections was not affording defendant the sentence credit that the court intended and to which the State and defense agreed. The court having apprised the parties of the Department's actions, the assistant State's Attorney consulted with the Department of Corrections and, with its input, and with the help of defense counsel and the approval of the court, fashioned an order intended to better reflect and clarify the court's original judgment, and see to it that defendant received sentence credit pursuant to the parties' negotiated plea agreement. While the orders and mittimuses thus prepared may not resolve the issue of sentence credit to the Department's satisfaction, we reject its argument that the circuit court lacked the authority to enter them.

In passing, we note, with an appreciation of the irony and incongruity, that in *Baker*, 106 Ill. 2d at 104, it was the *Department* that repeatedly urged the trial judge to amend the mittimus, well after the court had lost jurisdiction to modify the judgment itself. It appears that the Department indirectly participated in the amendments in this case as well through contact with the State's Attorney's office. The Department's current position is not only untenable, but would also seem to be more a product of convenience than conviction.

Finally, the Department claims that "the trial court's orders, compelling the Department of Corrections to apply aggregate credit, entered in a proceeding in which the Department of Corrections was not a party, are void."

According to the Department, pursuant to section 5—8—4(e)(4) of the Code, "the calculation of a criminal defendant's prison term and the appropriate method of applying credit are matters entrusted solely to the Department of Corrections." The Department, it seems, objects to what it perceives as an attempt on the part of the trial court to order credit applied "in a particular manner" by "aggregating" the credits in defendant's two cases.

We find the Department's *in personam* jurisdiction argument particularly troubling. Judgments and mittimuses are prepared every day directing the Department to confine persons in correctional facilities and specifying the sentence credit due them. Surely the Department does not seriously suggest that it is free of any duty to confine those committed and grant them the credit specified because it is not a party to the proceedings in the circuit court. It cannot actually contend that the records officers at each of its facilities may routinely question the judicial interpretations inherent in every sentence. Yet, both propositions would seem to be logical extensions of the Department's argument.

Although we recognize that this court has held the extraordinary remedy of *mandamus* to be a proper remedy where a trial judge has imposed sentences not authorized by law (see *People ex rel. Baker v. Cowlin*, 154 Ill. 2d 193 (1992)), we see no clear evidence that has occurred here. Consequently, we deem it unnecessary to reach the Department's final issue given the procedural posture of this case. As we have previously stated, it is not evident from the record that the circuit court incorrectly applied the law in its order or that it lacked the authority to enter the order directing amendment of the mittimuses. If the circuit court was correct in its application of the law, our treatment of this issue now could result in a hollow pronouncement with no substantive ef-

fect in the case at bar. A court of review will not ordinarily consider issues that are not essential to the disposition of the cause before it; nor will it decide moot or abstract questions, review cases merely to establish precedent, or render advisory opinions. *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99 (1990).

For all the reasons heretofore stated, the judgment of the appellate court in No. 84102 is vacated and the cause is remanded to the circuit court; the judgment of the appellate court in No. 84125 is affirmed in part and reversed in part and the judgment of the circuit court is affirmed; and the Department's request for a writ of *mandamus* in No. 84221 is denied.

*No. 84102—Appellate court judgment vacated; cause remanded with directions.*

*No. 84125—Appellate court judgment affirmed in part and reversed in part; circuit court judgment affirmed.*

*No. 84221—Writ denied.*