# Illinois Official Reports

## Appellate Court

---

### *People v. Inman*, **2014 IL App (5th) 120097**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS G. INMAN, Defendant-Appellant. |
| District & No. | Fifth District<br>Docket No. 5-12-0097 |
| Filed | February 4, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where defendant was convicted of first-degree murder and attempted first-degree murder and sentenced to concurrent terms of natural life for first-degree murder and 30 years for attempted first-degree murder, but the natural-life sentence was vacated 21 years later and on resentencing he was sentenced to 35 years for the first-degree murder to be served consecutively to the 30 years imposed for attempted first-degree murder, his postconviction petition alleging that the new sentence violated the double jeopardy clause was properly dismissed, since both the individual murder sentence and the aggregate term in prison were reduced by the resentencing court and the punishment imposed did not exceed what defendant anticipated when he was originally sentenced. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 85-CF-181; the Hon. Brian Babka, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Peter A. Carusona, and Thomas A. Karalis, all of State Appellate Defender's Office, of Ottawa, for appellant.

Brendan F. Kelly, State's Attorney, of Belleville (Patrick Delfino, Stephen E. Norris, David M. Sanchez, and Whitney E. Atkins, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Goldenhersh and Wexstten* concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant, Thomas G. Inman, appeals an order dismissing his petition for postconviction relief at the second stage. The defendant was convicted of first-degree murder and attempted first-degree murder and sentenced to concurrent prison terms of natural life for murder and 30 years for attempted first-degree murder. After his natural-life sentence was vacated years later, the defendant was resentenced to 35 years on the murder charge, to be served consecutive to the 30-year attempted murder sentence. The defendant filed a postconviction petition, alleging that the resentencing court violated principles of double jeopardy by ordering his sentences to run consecutively. On appeal from the second-stage dismissal of that petition, the defendant argues that (1) the consecutive sentences violate his right to due process and (2) consecutive sentences constitute double jeopardy. We affirm.

¶ 2     The charges at issue in this appeal stem from an argument in a bar that escalated to a violent confrontation. The defendant and two friends waited outside the bar for two other men to leave. They then followed the other men in their car and ran the car off the road at the next exit. In the ensuing fight, one man was stabbed to death. The other was stabbed multiple times and suffered serious injuries, but survived. The defendant was arrested in March 1985 and subsequently convicted on one count of murder and one count of attempted murder. In August 1985, the trial court found that the murder was committed in an exceptionally brutal and heinous manner. Based on this finding, the court sentenced the defendant to natural life in prison for the murder conviction. The court sentenced the defendant to 30 years for the attempted murder conviction, to be served concurrently with the sentence for murder.

---

*Justice Wexstten fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6, 605 N.E.2d 544 (1992).

¶ 3    In August 2000, the defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)), which the court treated as a postconviction petition. He alleged that his natural-life sentence violated the rule annunciated in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He argued that the sentencing court imposed this extended-term sentence relying on a finding which, under *Apprendi*, had to be made beyond a reasonable doubt by the trier of fact. Specifically, the sentencing court found that the murder was committed in an exceptionally brutal and heinous manner (Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-1(a)(1)).

¶ 4    In June 2001, the court granted the defendant's petition and vacated his natural-life sentence for murder.[1] The court directed the State to choose between two options. The State could again seek a natural-life sentence, which would require the State to retry the defendant and prove to a jury beyond a reasonable doubt that the murder was committed in an exceptionally brutal and heinous manner. Alternatively, the State could choose not to seek an extended-term sentence, in which case the court would hold only a new sentencing hearing. The State chose the latter option.

¶ 5    Most of the proceedings that followed involved the question of whether the trial court could impose consecutive sentences. The court ultimately determined that (1) under the sentencing law in effect in 1985, it had the discretion to impose consecutive sentences, and (2) consecutive sentences would not run afoul of the constitutional protection against double jeopardy.

¶ 6    The matter came for a resentencing hearing in July 2006. The defendant chose to be sentenced under the law in effect in 1985, when the murder was committed. See *People v. Strebin*, 209 Ill. App. 3d 1078, 1081, 568 N.E.2d 420, 422 (1991). The parties presented evidence in aggravation and mitigation. Much of the evidence in mitigation concerned the defendant's rehabilitative efforts during the 21 years he had already served in prison. Much of the evidence in aggravation focused on the defendant's extensive prior criminal record and the nature of the offense. The court found that consecutive sentences were appropriate for two reasons: (1) the defendant committed a Class X or Class 1 felony and inflicted serious bodily injuries (Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-4(a)), and (2) consecutive sentences were necessary to protect the public (Ill. Rev. Stat. 1985, ch. 38, ¶ 1005-8-4(b)). The court sentenced the defendant to 35 years in prison, to be served consecutive to his sentence for attempted murder. The sentencing order provided that the defendant was to be given credit for time served.

¶ 7    The defendant appealed that sentence, arguing that the resentencing court abused its discretion by imposing consecutive sentences. He did not raise the constitutional issues involved in this appeal. This court affirmed the sentence. *People v. Inman*, 375 Ill. App. 3d 1161, 945 N.E.2d 703 (2007) (unpublished order under Supreme Court Rule 23).

¶ 8    The defendant next filed a *pro se* petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 to 122-8 (West 2008)). In relevant part, he alleged that consecutive sentences

---

[1]We note that the Illinois Supreme Court subsequently held that *Apprendi* does not apply retroactively. *People v. De La Paz*, 204 Ill. 2d 426, 437, 791 N.E.2d 489, 496 (2003).

violated the double jeopardy clause and that appellate counsel was ineffective for failing to raise this issue on direct appeal. The postconviction court dismissed the defendant's petition summarily, finding it to be a successive petition filed without leave of the court. On appeal from that ruling, this court found that the petition at issue was the first petition to challenge the 2006 sentencing order. We thus concluded that it was not a "successive" petition and the defendant, therefore, "did not require leave of the court to file it." *People v. Inman*, 407 Ill. App. 3d 1156, 1162, 947 N.E.2d 319, 324-25 (2011). We reversed the court's order dismissing the defendant's petition and directed the court to docket the matter for second-stage proceedings. *Inman*, 407 Ill. App. 3d at 1163, 947 N.E.2d at 325.

¶ 9 On remand, counsel was appointed to represent the defendant. Counsel filed an amended petition on behalf of the defendant, which also alleged that consecutive sentences violated the constitutional protection against double jeopardy. The amended petition further alleged that both appellate counsel and counsel at the resentencing hearing were ineffective. The State filed a motion to dismiss the defendant's petition. The postconviction court found that there was no double jeopardy violation. In support of this conclusion, the court noted that (1) the resentencing court had the statutory authority to impose consecutive sentences and (2) the length of the murder sentence was reduced, not increased. The court therefore granted the State's motion to dismiss. This appeal followed.

¶ 10 In this appeal, the defendant raises two issues. He first argues that the consecutive sentences violate principles of due process under *North Carolina v. Pearce*, 395 U.S. 711 (1969). He next argues that consecutive sentences violate the double jeopardy clause. Before considering the merits of these arguments, we must address the State's contention that the defendant has forfeited both of these arguments.

¶ 11 The State argues that the defendant has forfeited his arguments for two reasons. First, the State contends that both arguments are forfeited because the defendant could have raised them in his direct appeal, but did not do so. We note, however, that the defendant has alleged ineffective assistance of counsel on direct appeal. The State further contends that the defendant forfeited his due process argument because he did not raise it in his amended postconviction petition. We note that forfeiture is a limitation on the parties, not the courts. *People v. Haissig*, 2012 IL App (2d) 110726, ¶ 20, 976 N.E.2d 1121 (citing *People v. Carter*, 208 Ill. 2d 309, 318-19, 802 N.E.2d 1185, 1190 (2003)). We further note that the arguments are closely connected. We will therefore consider both of the defendant's arguments on their merits.

¶ 12 This case was dismissed at the second stage of postconviction proceedings. Our review is therefore *de novo*. *People v. Clark*, 2011 IL App (2d) 100188, ¶ 17, 957 N.E.2d 162 (citing *People v. Simpson*, 204 Ill. 2d 536, 547, 792 N.E.2d 265, 274-75 (2001)).

¶ 13 The defendant first argues that principles of due process precluded the court from imposing consecutive sentences on remand. The relevant principles were discussed by the United States Supreme Court in *North Carolina v. Pearce*. There, the Court explained that "it would be a flagrant violation" of a defendant's right to due process if a sentencing court were to impose a harsher sentence after remand from a successful appeal "for the explicit purpose of punishing the defendant" for filing the appeal. *Pearce*, 395 U.S. at 723-24. The Court noted, however, that "there exists no absolute constitutional bar to the imposition of a more severe sentence

- 4 -

upon retrial." *Pearce*, 395 U.S. at 723. The Court held that when a trial judge imposes a more severe sentence after remand from an appeal, the record must affirmatively show the reasons for the court's decision to do so, and those reasons must relate to "objective information concerning identifiable conduct" by the defendant subsequent to the original sentencing proceedings. *Pearce*, 395 U.S. at 726.

¶ 14    Our legislature codified the *Pearce* holding in section 5-5-4 of the Unified Code of Corrections (730 ILCS 5/5-5-4 (West 2006)). That statute provides that a court "shall not impose a new sentence for the same offense or for a different offense based on the same conduct which is more severe than the prior sentence *** unless the more severe sentence is based upon conduct on the part of the defendant occurring after the original sentencing." 730 ILCS 5/5-5-4(a) (West 2006).

¶ 15    On resentencing in this case, the defendant was sentenced to 35 years for the murder conviction. This is a shorter sentence than his original sentence of natural life in prison. His 30-year sentence for attempted murder was not changed. The question raised by the defendant is whether the trial court nevertheless made either of these sentences more onerous than the original sentences by ordering the reduced murder sentence to run consecutive to the defendant's sentence for attempted murder when the sentences were originally ordered to run concurrently. For the reasons that follow, we conclude that it did not.

¶ 16    One of the first cases to address this question was this court's decision in *People v. Giller*, 191 Ill. App. 3d 710, 548 N.E.2d 341 (1989). There, the defendant was convicted on three charges of aggravated criminal sexual assault. *Giller*, 191 Ill. App. 3d at 711, 548 N.E.2d at 341. He was originally sentenced to concurrent extended-term sentences of 60 years on all three charges. *Giller*, 191 Ill. App. 3d at 712, 548 N.E.2d at 342. On appeal, this court found the extended-term sentences to be improper. *Giller*, 191 Ill. App. 3d at 711, 548 N.E.2d at 341. On remand, the trial court imposed sentences of 30 years on all three charges. The court ordered two of those sentences to run concurrently, but ordered that the third be served consecutive to the other two sentences. *Giller*, 191 Ill. App. 3d at 711, 548 N.E.2d at 342.

¶ 17    The defendant again appealed. He argued, much as the defendant argues here, that consecutive sentences were not proper when concurrent sentences were originally imposed. *Giller*, 191 Ill. App. 3d at 712, 548 N.E.2d at 342. In rejecting his contention, this court stated that the "defendant's sentence on remand was no more severe than his original sentence. His original sentence was for an extended term of 60 years' imprisonment, and his resentence totaled 60 years' imprisonment." *Giller*, 191 Ill. App. 3d at 712, 548 N.E.2d at 342. We thus found that the new sentences complied with the requirements of section 5-5-4 of the Unified Code of Corrections, the same statute that is at issue here. *Giller*, 191 Ill. App. 3d at 711-12, 548 N.E.2d at 342.

¶ 18    The quoted language in *Giller* focused on the aggregate length of all of the defendant's sentences. As the defendant here correctly points out, subsequent decisions have focused instead on the severity of the individual sentences. For example, in *People v. Kilpatrick*, 167 Ill. 2d 439, 657 N.E.2d 1005 (1995), the defendant was originally sentenced to consecutive terms of nine years and six years. After a motion to reconsider his sentence, the court vacated the consecutive sentences and imposed a " 'single sentence of 15 years.' " *Kilpatrick*, 167 Ill.

2d at 441, 657 N.E.2d at 1006. The supreme court found that, even though the aggregate prison term remained the same, the new sentence ran afoul of the relevant statute because the individual sentences were increased from 9 and 6 years, respectively, to 15 years. *Kilpatrick*, 167 Ill. 2d at 446-47, 657 N.E.2d at 1008; see also *People v. Rivera*, 212 Ill. App. 3d 519, 525, 571 N.E.2d 202, 206 (1991). The rationale behind these holdings is that consecutive sentences for multiple offenses "constitute separate sentences for each crime of which a defendant has been convicted." *People v. Carney*, 196 Ill. 2d 518, 529, 752 N.E.2d 1137, 1143 (2001). "[C]onsecutive sentences are not treated as a single sentence" for purposes of determining whether the new sentence is harsher than the original sentence. *Kilpatrick*, 167 Ill. 2d at 446, 657 N.E.2d at 1008.

¶ 19    The defendant points to this rationale and argues that *Giller* was wrongly decided. He contends that these subsequent decisions show that Illinois takes a count-by-count approach to sentencing rather than determining the question based on the aggregate term in prison. This argument implies that under *Giller*, an increase in any individual sentence would be permissible as long as the aggregate was not increased. This apparent interpretation overstates our holding. In *Giller*, there was no question that none of the individual sentences were more onerous than the sentences originally imposed. The original sentences were extended-term sentences of 60 years; the sentences on remand were nonextended-term sentences of 30 years. Thus, unlike the *Kilpatrick* and *Rivera* courts, the *Giller* court was not called upon to consider the propriety of an increase to any individual sentence. The court was concerned only with the effect of running reduced sentences consecutively on the aggregate term in prison.

¶ 20    Under *Kilpatrick* and the express terms of section 5-5-4, courts may not increase any individual sentence. The implication of our decision in *Giller* is that courts also may not increase the aggregate term of multiple sentences. We note that, subsequent to our decision, other districts of the Illinois Appellate Court have found that an increase in the aggregate term a defendant will spend in prison does *not* run afoul of section 5-5-4 or raise due process concerns as long as no individual sentence is increased. See, *e.g.*, *People v. Harris*, 366 Ill. App. 3d 1161, 1165-66, 853 N.E.2d 912, 916 (2006); *People v. Sanders*, 356 Ill. App. 3d 998, 1005, 827 N.E.2d 17, 22-23 (2005). We do not believe this is an appropriate case to reconsider our holding in *Giller*. Here, the defendant acknowledges that the aggregate was not increased. Moreover, as we will next discuss, we find that neither of the individual sentences became more severe as a result of being made consecutive.

¶ 21    The defendant bases his argument to the contrary on *People v. Pugh*, 325 Ill. App. 3d 336, 758 N.E.2d 319 (2001). There, the defendant was convicted on charges of murder, armed robbery, and forcible detention. *Pugh*, 325 Ill. App. 3d at 338, 758 N.E.2d at 322. He was originally sentenced to death for the murder charge and to concurrent sentences of 30 years and 7 years for the additional charges. The defendant successfully appealed his death sentence, and the matter was remanded for resentencing. *Pugh*, 325 Ill. App. 3d at 338, 758 N.E.2d at 322.

¶ 22    On remand, the trial court sentenced the defendant to an extended term of 70 years for the murder charge, to be served consecutive to the concurrent sentences for armed robbery and forcible detention. *Pugh*, 325 Ill. App. 3d at 338, 758 N.E.2d at 322. The defendant appealed the new sentence. A panel of the First District found that by ordering the sentences to be served

consecutively when they were originally ordered to run concurrently, the trial court "effectively increased the amount of time defendant would spend incarcerated for the armed robbery and forcible detention offenses." *Pugh*, 325 Ill. App. 3d at 349, 758 N.E.2d at 330. In light of this finding, the court amended the sentencing order to provide that the sentences would run concurrently. *Pugh*, 325 Ill. App. 3d at 349, 758 N.E.2d at 330-31.

¶ 23        The State argues that *Pugh* is distinguishable from the instant case because the sentences there could not have been ordered to run consecutively when the defendant was originally sentenced. See *Pugh*, 325 Ill. App. 3d at 348-49, 758 N.E.2d at 330 (explaining that the statute permitting consecutive sentencing is not applicable when the death penalty is imposed). We disagree. The *Pugh* court expressly stated that it was concerned that imposing consecutive sentences would increase the defendant's time in prison on the armed robbery and forcible detention charges. *Pugh* does, therefore, support the defendant's position.

¶ 24        However, we are not bound by the decisions of other districts of the Illinois Appellate Court. *People v. Damkroger*, 408 Ill. App. 3d 936, 944, 946 N.E.2d 948, 954-55 (2011). The *Pugh* court did not explain the rationale for its conclusion that making the defendant's new murder sentence run consecutive to his other sentences would result in more time in prison on the additional charges. We do not find this holding persuasive, particularly when it is at odds with the overwhelming weight of authority in Illinois, which holds that ordering sentences to run consecutively on remand does not itself constitute an increase in any individual sentence. See *Harris*, 366 Ill. App. 3d at 1165-66, 853 N.E.2d at 916; *People v. Moore*, 359 Ill. App. 3d 1090, 1092-93, 835 N.E.2d 980, 982 (2005); *Sanders*, 356 Ill. App. 3d at 1005, 827 N.E.2d at 22-23. We therefore decline to follow *Pugh*.

¶ 25        The defendant, however, argues that his 30-year attempt sentence will become more onerous due to the impact a consecutive sentence will have on the calculation of his sentence credit. We find this argument unavailing.

¶ 26        When a defendant is sentenced to concurrent sentences, he is entitled to credit against both sentences for any time spent in custody that is attributable to both charges. *People v. Robinson*, 172 Ill. 2d 452, 462-63, 667 N.E.2d 1305, 1310 (1996) (citing 730 ILCS 5/5-8-7(b) (West 1992)). By contrast, when consecutive sentences are imposed, all time spent in custody is credited only once against the aggregate term of the consecutive sentences. *People v. Latona*, 184 Ill. 2d 260, 270-71, 703 N.E.2d 901, 907 (1998) (citing 730 ILCS 5/5-8-4(e) (West 1994)). The day-for-day good-time credit available to the defendant under the sentencing laws in effect in 1985 is calculated based on the same principle. See *Armstrong v. Washington*, 289 Ill. App. 3d 306, 309, 682 N.E.2d 761, 763 (1997). Thus, the defendant argues, he will lose credit for the 21 years he spent in prison prior to resentencing in this case, including the day-for-day good-time credit.

¶ 27        This argument overlooks the nature of the natural-life sentence imposed when the defendant was originally sentenced. Under that sentence, the defendant was not eligible for parole. See *Heirens v. Prisoner Review Board*, 162 Ill. App. 3d 762, 765, 516 N.E.2d 613, 615 (1987) (citing Ill. Rev. Stat. 1985, ch. 38, ¶¶ 1003-3-3(d), 1005-8-1(d)). He was not eligible for *any* release except through a grant of executive clemency. Ill. Rev. Stat. 1985, ch. 38, ¶ 1003-3-3(d). Thus, the natural-life sentence could not have been reduced by any type of

sentence credit. Had the defendant not challenged his original sentence, his 30-year-attempt sentence would have been discharged when satisfied, and the defendant would have remained in prison serving the original natural-life sentence for murder for the remainder of his life.

¶ 28    The resentencing order changes this result in two ways. First, instead of spending the remainder of his life in prison, the defendant will remain in prison long enough to satisfy both the 30-year and 35-year sentences, with credit for time served as well as all day-for-day good-time credit for which he is eligible. Second, because the Department of Corrections treats consecutive sentences as a single sentence for the limited purposes of calculating sentence credit and determining how consecutive sentences will be served (see 730 ILCS 5/5-8-4(e) (West 2012)), the mittimus reflects that the defendant's attempted murder sentence has not been discharged.

¶ 29    We do not believe that this mittimus change rises to the level of a due process violation where, as here, neither sentence is more severe than the original sentences imposed. As the supreme court has repeatedly held, consecutive sentencing alters the manner in which a sentence is to be served, not the actual sentence. *People v. Phelps*, 211 Ill. 2d 1, 14, 809 N.E.2d 1214, 1222 (2004); *Carney*, 196 Ill. 2d at 530, 752 N.E.2d at 1144. The amount of time the defendant will spend in prison as a result of the attempt charge remains unchanged, while the time he will spend in prison as a result of the murder sentence has been reduced. Thus, neither individual sentence has been made more severe.

¶ 30    Nevertheless, the defendant points out that if the original sentencing court had sentenced him to a concurrent term of 35 years for the murder, he would have been eligible for credit against that sentence. The question, however, is not whether the court has rendered a sentence that is more severe than a hypothetical original sentence the court might have imposed. Rather, the question is whether an otherwise authorized sentence is more severe than the original sentence the court actually imposed. As we have explained, that did not occur here. We thus conclude that the resentencing court did not violate principles of due process or the requirements of section 5-5-4 when it ordered the defendant's sentence for murder to run consecutive to his sentence for attempt.

¶ 31    The defendant next argues that the sentencing court violated the double jeopardy clause of the fifth amendment by ordering that the sentences be served consecutively after he had already served 21 years of a concurrent sentence. We disagree.

¶ 32    There are three components to double jeopardy protection. The double jeopardy clause protects criminal defendants from (1) facing a new trial after an acquittal, (2) facing a second trial after a conviction, and (3) facing multiple punishments for the same offense. *Jones v. Thomas*, 491 U.S. 376, 380-81 (1989). The prohibition on multiple punishments is " 'limited to ensuring that the total punishment [does] not exceed that authorized by the legislature.' " *Jones*, 491 U.S. at 381 (quoting *United States v. Halper*, 490 U.S. 435, 450 (1989)). Generally, consecutive sentences do not implicate this aspect of double jeopardy because consecutive sentences do not constitute " 'punishment beyond that authorized by the jury's verdict, provided that the sentence for each separate offense does not exceed the maximum permitted by statute for that offense.' " *Phelps*, 211 Ill. 2d at 14, 809 N.E.2d at 1222 (quoting *Carney*, 196 Ill. 2d at 532, 752 N.E.2d at 1145).

¶ 33    However, the defendant argues that under the circumstances of this case, consecutive sentences raise double jeopardy concerns for two closely connected reasons. First, as the defendant correctly notes, double jeopardy requires that a defendant receive credit against his sentence for any time already served. *Pearce*, 395 U.S. at 718-19. This includes any good-time credit attributable to time already served. *Pearce*, 395 U.S. at 719 n.13. Here, the 2006 resentencing order gives the defendant credit for all time served since his March 1985 arrest. The defendant argues that this is insufficient because under *Latona*, that credit need only be applied once toward the aggregate prison term; it need not be applied in full to each individual sentence. *Latona*, 184 Ill. 2d at 270-71, 703 N.E.2d at 907.

¶ 34    Ordinarily, this method of calculating sentencing credit does not raise double jeopardy concerns. As the *Latona* court pointed out, the purpose of sentence credit "is to ensure that defendants do not ultimately remain incarcerated for periods in excess of their eventual sentences." *Latona*, 184 Ill. 2d at 270, 703 N.E.2d at 906 (citing *People v. Ramos*, 138 Ill. 2d 152, 159, 561 N.E.2d 643, 647 (1990)). This, as we have noted, is a requirement of double jeopardy protection. See *Pearce*, 395 U.S. at 718-19. It was with this requirement in mind that the *Latona* court determined what sentence credit calculation method was appropriate for consecutive sentences.

¶ 35    The court explained that when a defendant is sentenced to concurrent prison terms, time spent in custody that is applicable to both offenses must be credited toward each of the sentences in order to satisfy the requirement that a defendant serve no more time than the sentence actually imposed. "[B]ecause the sentences are served concurrently," the court explained, "the credits are applied in that manner as well." *Latona*, 184 Ill. 2d at 271, 703 N.E.2d at 907. In the context of consecutive sentences, however, giving a defendant credit for each day served and applying that credit to the defendant's aggregate term is sufficient to ensure the defendant serves no more time than the sentence imposed. This is because "[d]efendants must be given credit for all the days they actually served, but no more." *Latona*, 184 Ill. 2d at 272, 703 N.E.2d at 907.

¶ 36    What makes this case different from *Latona* is the fact that the defendant here was in prison for 21 years prior to being sentenced to consecutive terms. For much of that time, he understood that he was serving two consecutive sentences. This brings us to the second aspect of the defendant's contention.

¶ 37    As the defendant correctly points out, the double jeopardy clause protects a defendant's interest in finality. *People v. Levin*, 157 Ill. 2d 138, 161, 623 N.E.2d 317, 328 (1993). This includes a legitimate interest in the finality of his sentence. *Jones*, 491 U.S. at 393-94 (Scalia, J., dissenting) (quoting *United States v. DiFrancesco*, 449 U.S. 117, 139 (1980)); *Levin*, 157 Ill. 2d at 161, 623 N.E.2d at 328. Essentially, the defendant argues that he must be given credit against both sentences to protect his interest in the finality of the concurrent aspect of the original sentencing order. We are not persuaded.

¶ 38    Although the underlying facts are not analogous to those of the case before us, we find the United States Supreme Court's discussion of this aspect of double jeopardy in *Jones v. Thomas* instructive. There, the defendant was originally convicted and sentenced in Missouri on charges of felony murder and attempted robbery. The attempted robbery was the underlying

felony for the charge of felony murder. *Jones*, 491 U.S. at 378. The defendant was sentenced to natural life in prison for the murder and 15 years for the attempted robbery, to be served consecutively. The court ordered that the attempted robbery sentence be served first. *Jones*, 491 U.S. at 378.

¶ 39 Four years after he was sentenced, the defendant filed a postconviction petition, alleging that it was improper for the court to impose sentences on both charges because the attempted robbery was the underlying felony for the felony-murder charge. *Jones*, 491 U.S. at 378. After another 4 years, the 15-year attempted robbery sentence was commuted to a shorter sentence with a release date that month. At this point, the postconviction petition was still pending. *Jones*, 491 U.S. at 379. The following year, the postconviction court granted the defendant's petition and vacated the attempted robbery conviction and sentence. *Jones*, 491 U.S. at 379.

¶ 40 The defendant appealed, arguing that because he had fully satisfied the reduced sentence for attempted robbery, "his continued confinement under the longer sentence constituted double jeopardy." *Jones*, 491 U.S. at 379. The state appeals court rejected this claim, finding that credit for his entire period of incarceration against the longer sentence was sufficient to protect him against double jeopardy. *Jones*, 491 U.S. at 379 (citing *Thomas v. State*, 665 S.W.2d 621 (Mo. Ct. App. 1983)).

¶ 41 The Supreme Court first emphasized that the prohibition on multiple punishments is intended to prevent a sentencing court from imposing sentences that exceed those intended by the legislature. *Jones*, 491 U.S. at 381. The Court explained that its resolution of the defendant's double jeopardy claim turned on the fact that this was the interest meant to be protected. *Jones*, 491 U.S. at 381. The Court acknowledged, however, that the double jeopardy clause "protects not only against punishment in excess of legislative intent, but also against *additions* to a sentence in a subsequent proceeding that upset a defendant's legitimate expectation of finality." (Emphasis added.) *Jones*, 491 U.S. at 385. In determining whether the Missouri state courts upset this expectation in the case before it, the Court analyzed what the defendant's reasonable expectations were with regard to that sentence.

¶ 42 The Court noted that when the defendant was originally sentenced, he had no reason to expect to serve only the shorter attempted robbery sentence. "Indeed," the Court explained, "his expectation at that point was to serve both consecutive sentences." *Jones*, 491 U.S. at 386. This was because the Missouri state cases holding that a defendant could not be sentenced for both felony murder and the underlying felony were decided after the original sentences were imposed. *Jones*, 491 U.S. at 386. The Court further noted that, once the Missouri Supreme Court determined that both sentences could not be imposed, the defendant's legitimate expectation was that he would serve one sentence or the other. *Jones*, 491 U.S. at 386. Thus, taking into account the defendant's expectations, the Supreme Court found that the decision to leave his murder sentence intact did not constitute an increase or addition. *Jones*, 491 U.S. at 385-86.

¶ 43 Here, when the defendant was originally sentenced, his expectation was that he would spend the rest of his life in prison. As explained previously, he had no legitimate expectation that his natural-life sentence for murder would actually be reduced by any available credit because that sentence carried with it no possibility of release during his lifetime. Moreover,

while a criminal defendant *does* have an interest in the finality of sentencing determinations, this interest is far less significant than his interest in not being convicted. *Levin*, 157 Ill. 2d at 144, 623 N.E.2d at 320 (noting that this is so because "[t]he imposition of a particular sentence usually is not regarded as an acquittal of any more severe sentence than could have been imposed"). Assuming the defendant here had any legitimate expectation that a single aspect of his original sentence, viewed in isolation, would remain unchanged after he challenged the sentence, that expectation alone does not rise to the level of the interests meant to be protected by double jeopardy. Here, both the individual murder sentence and the aggregate term in prison have been *reduced* by the resentencing court. Thus, the court did not impose a punishment that exceeded the sentence the defendant expected to serve when he was originally sentenced. We find no double jeopardy violation.

¶ 44 For the foregoing reasons, the order of the postconviction court dismissing the defendant's petition is affirmed.

¶ 45 Affirmed.